VITALIANO , J.

POLLAK, M.J.



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

ANTHONY HALL

*(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

-against-

See ATTACHED

*(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

Complaint for a Civil Case

Case No. **CV19-7322**

*(to be filled in by the Clerk's Office)*

Jury Trial:   ☑ Yes   ☐ No
*(check one)*



RECEIVED
DEC 27 2019
PRO SE OFFICE

DEFENDANTS

BANK OF NEW YORK MELLON/ CEO THOMAS P. GIBSON et al

LEO SALZMAN ESQ et al

HON NOACH DEAR et al

NANCY T. SUNSHINE et al

ADVANTAGE FORECLOSURE et al

BERKMAN, HENOCH, PETERSON & PEDDY/ SUZANNE MANGO et al

STUART L. DRUCKMAN et al

AUCTION.COM et al

COURIER LIFE PUBLICATION/ AMANDA TARLEY et al

STEWART TITLE COMPANY et al

EIAL GIRTZ et al

261 BRICK LLC/ JOESEPH YAAKOVZADEH et al

BULLPATH CAPITAL CORP et al

MILLENNIUM ABSTRACT CORP et al

VICKIE CALAGNA et al

MARIA SIDERIS et al

MORELL BUILDERS/ GERARDO MORELL et al

BROTHERS TRUCKING et al

HON CHERYL J GONZALES et al

AGNELLI REAL ESTATE/ MYLES MITCHELL et al

SHELLPOINT MORTGAGE SERVICING LLC et al

MARGOLIN & WEINREB LAW GROUP et al

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | ANTHONY HALL |
| Street Address | 114 JOHN ST STE. 78 |
| City and County | NewYork N.Y |
| State and Zip Code | 10272 |
| Telephone Number | 347 362 3731 |
| E-mail Address | AWHALL25@GMAIL.COM |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | BANK OF NEWYORK MELLON |
| Job or Title (if known) | THOMAS P. GIBSONS CEO |
| Street Address | 240 GREENWICH ST |
| City and County | NewYork |
| State and Zip Code | NewYork 10286 |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | LEO SALZMAN ESO |
| Job or Title (if known) | REFEREE |
| Street Address | 2116 AVE J |
| City and County | BROOKLYN |

2

State and Zip Code _NEW YORK 11210_

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. 3

Name _NOACH DEAR_

Job or Title _JUSTICE_
(if known)

Street Address _360 ADAM ST_

City and County _BROOKLYN N.Y._

State and Zip Code _11201_

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. 4

Name _NANCY T SUNSHINE_

Job or Title _CLERK_
(if known)

Street Address _360 ADAMS ST_

City and County _BROOKLYN N.Y._

State and Zip Code _11201_

Telephone Number _____

E-mail Address _____
(if known)

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

Defendant No. 4

Name ADVANTAGE FORECLLOUSER

Job or Title _____

(if known)

Street Address 410 NEW YORK AVE

City and County HUNTINGTON

State and Zip Code NEWYORK 11743

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. 5

Name BERKMAN, HENOCH PETERSON + PEDDY

Job or Title SUZANE MANGO

(if known)

Street Address 100 GARDEN CITY PLAZA

City and County GARDEN CITY

State and Zip Code NEWYORK 11530

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. 6

Name MORTGAGE ELECTRONIC REGISTRATION SYSTEM INC

Job or Title _____

(if known)

Street Address 7105 CORPORATE DRIVE

City and County PLANO

State and Zip Code TEXAS 75024

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. 7

Name STUART L DRUCKMAN

Job or Title _____

(if known)

Street Address 242 DREXEL AVENUE

City and County WESTBURY N.Y

State and Zip Code 11590

Telephone Number 576 876 0800

E-mail Address MMARSH @ DIGNYLAW.COM
(if known)

Defendant No. 8

Name AUCTION.COM

Job or Title _____

(if known)

Street Address 1 MAUCHLY

City and County IRVINE CA

State and Zip Code 92618

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. 9

Name AMANDA TARLCY/COURIER LIFE PUB.

Job or Title _____

(if known)

Street Address 1 METROTCCH NORTH 10th FL

City and County BROOKLYN NY

State and Zip Code 11201

Telephone Number 718 260 2500

E-mail Address _____
(if known)

Defendant No. _10_

Name _STEWART TITLE INSURANC CO_

Job or Title_____
(if known)

Street Address _26 LAND CENTRAL TOWER_

City and County _140 EAST 45TH ST  33RD FL_

State and Zip Code _NEW YORK  NEW YORK 10017_

Telephone Number_____

E-mail Address_____
(if known)


Defendant No. _11_

Name _EIAL GIRTZ P.C_

Job or Title_____
(if known)

Street Address _1010 NORTHERN BLVD STE 232_

City and County _GREAT NECK N.Y 11021_

State and Zip Code_____

Telephone Number_____

E-mail Address_____
(if known)


Defendant No. _12_

Name _261 BRICK LLC / JOSEPH YAAKOVZADEH_

Job or Title_____
(if known)

Street Address _1855 7TH AVE APT 5D_

City and County _NEW YORK N.Y_

State and Zip Code _10026_

Telephone Number_____

E-mail Address_____
(if known)

Defendant No. 13
Name BULL PATH CAPITAL CORP
Job or Title
(if known)
Street Address 111 GREAT NECK RD. STE 508
City and County GREAT NECK
State and Zip Code NEW YORK 11021
Telephone Number
E-mail Address
(if known)

Defendant No. 14
Name MILLENNIUM ABSTRACT CORP
Job or Title
(if known)
Street Address 35 N TYSON AVE
City and County FLORAL PARK
State and Zip Code NEW YORK 11001
Telephone Number
E-mail Address
(if known)

Defendant No. 15
Name VICKIE CALAGNA
Job or Title
(if known)
Street Address 755 JEFFERSON RD #500
City and County ROCHESTER
State and Zip Code N.Y 14623
Telephone Number 585 454 4770
E-mail Address
(if known)

Defendant No. _16_

Name _MARIA SIDERIS ESQ_

Job or Title _____
(if known)

Street Address _55 BEATTIE PLACE SUITE 100_

City and County _GREENVILLE_

State and Zip Code _SOUTH CAROLINA 29601_

Telephone Number _____

E-mail Address _____
(if known)


Defendant No. _17_

Name _GERARDO MORELL / MORRELL BUILDERS_

Job or Title _____
(if known)

Street Address _71-01 AUSTIN ST STE 201C_

City and County _KEW GARDENS_

State and Zip Code _NEW YORK 11415_

Telephone Number _____

E-mail Address _____
(if known)


Defendant No. _18_

Name _BROTHERS TRUCKING INC_

Job or Title _____
(if known)

Street Address _146-09 120 AVE_

City and County _JAMAICA N.y 11436_

State and Zip Code _____

Telephone Number _____

E-mail Address _____
(if known)

Defendant No. _19_

Name _CHERYL GONZALES_

Job or Title _JUDGE_
(if known)

Street Address _141 LIVINGSTON ST_

City and County _BROOKLYN_

State and Zip Code _NEW YORK 11201_

Telephone Number _____

E-mail Address _____
(if known)


Defendant No. ____

Name _AGNELLI REAL ESTATE / MYLES MITCHELL_

Job or Title _____
(if known)

Street Address _411 NAUBUK AVE_

City and County _GLASTONBURY_

State and Zip Code _CT 06033_

Telephone Number _____

E-mail Address _____
(if known)


Defendant No. ____

Name _SHELLPOINT MORTGAGE SERVICING LLC_

Job or Title _____
(if known)

Street Address _55 BEATTIE PLACE_

City and County _GREENVILLE_

State and Zip Code _S.C. 29601_

Telephone Number _____

E-mail Address _____
(if known)

Defendant No._____

Name _MARGOLIN & WEINREB LAW GROUP_

Job or Title_____

(if known)

Street Address _26 COURT ST SUITE 1200_

City and County _BROOKLYN NY_

State and Zip Code _11242_

Telephone Number_____

E-mail Address_____

(if known)


Defendant No._____

Name_____

Job or Title_____

(if known)

Street Address_____

City and County_____

State and Zip Code_____

Telephone Number_____

E-mail Address_____

(if known)


Defendant No._____

Name_____

Job or Title_____

(if known)

Street Address_____

City and County_____

State and Zip Code_____

Telephone Number_____

E-mail Address_____

(if known)

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

*FORECLOSURE FRAUD, CONSPIRICY WIRE FRAUD FRAUD FOR PROFIT, MORTGAGE FRAUD*

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. *Or* is a citizen of *(foreign nation)* _____

4

b.    If the defendant is a corporation

The defendant, *(name)* _____, is
incorporated under the laws of the State of *(name)*
_____, and has its principal place of
business in the State of *(name)* _____. *Or is*
incorporated under the laws of *(foreign nation)*
_____, and has its principal place of
business in *(name)* _____

*(If more than one defendant is named in the complaint, attach an
additional page providing the same information for each additional
defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant
owes or the amount at stake—is more than $75,000, not counting interest
and costs of court, because *(explain)*:

THE NOTE AND HOME VALUE WELL
EXCEED OVER ONE MILLION DOLLARS

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as
briefly as possible the facts showing that each plaintiff is entitled to the damages or other
relief sought. State how each defendant was involved and what each defendant did that
caused the plaintiff harm or violated the plaintiff's rights, including the dates and places
of that involvement or conduct. If more than one claim is asserted, number each claim
and write a short and plain statement of each claim in a separate paragraph. Attach
additional pages if needed.

THE DEFENDENTS ENGAGED IN NOTE FRAUD
MORTGAGE FRAUD, PREDATORY LENDING
WIRE FRAUD, COUNTERFIT OF NOTE DEED
THEFT

NOTE FRAUD- DEBT INSTRUMENT THAT WAS SUBMITTTED IN MY NAME TO SECURE OTHER ASSIST THAT WAS NOT AGREED TO BY ORIGINAL PARTY

MORTGAGE FRAUD – INTENTIONALLY, MISSTAEMENT, MISREPRESENTATION OR OMMISSION OF INFORMATION RELIED UPON BY AN UNDERWRITER OR LENDER TO FUND PURCHASE OR INSURE A LOAN SECURED BY THE PROPERTY

PREDATORY LENDING- UNETHICAL PRACTICES CONDUCTED BY A LENDING ORGANIZATION DURING A LOAN ORIGINATION PROCESS THA ARE UNFAIR DECEPTIVE AND FRAUDULENT

WIRE TRANSFER FRAUD – CRIME IN WHICH A PERSON CONDUCTS A SCHEME TO DEFRAUD OR OBTAIN MONEY BASED ON FALSE REPRESENTATION OR PROMISES

COUNTERFIT-MADE IN EXACT IMITATION OF SOMETHING VALUABLE OR IMPORTANT WITH THE INTENTION TO DECIEVE OR DEFRAUD

DEED THEFT- STEALING THE TITLE TO A HOUSE

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

I WANT MY HOME RETURNED FREE OF ANY
AND ALL LIENS AND ALL SECURITIES
ASSOCIATED WITH LOAN, MY NAME
AND PROPERTY

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: DEC 27, 2018

Signature of Plaintiff

Printed Name of Plaintiff    ANTHONY W. HALL

6

# EXHIBIT A





*WebCivil Supreme - Motion Detail*

Court: **Kings Supreme Court**
Index Number: **0003077/2010**
Case Name: **BANK OF NY MELLON vs. HALL,ANTHONY W**
Case Type: **RES FORECLOSURE FSC ELIGIBLE**
Track: **Standard**

**Motion Information:**

| Motion Number | Date Filed | Filed By | Relief Sought | Submit Date | Answer Demanded | Status |
|---|---|---|---|---|---|---|
| 3 | 05/26/2015 | Defendant | VACATE ORDER/JUDGMENT | | No | Decided: 06/24/2015 MARKED OFF Before Justice: KENNETH P. SHERMAN, PT. 67 |
| 2 | 07/10/2014 | Plaintiff | ORDER OF REFERENCE | | Yes | Decided: 09/24/2014 MOTION DENIED Before Justice: KENNETH P. SHERMAN, PT. 67 |
| 1 | 05/06/2013 | Defendant | SUBST/RELIEVED AS COUNSEL | | No | Decided: 06/12/2013 MOTION GRANTED Before Justice: KENNETH P. SHERMAN, PT. 67 |





*WebCivil Supreme - Appearance Detail*

Court:            **Kings Supreme Court**
Index Number:  **0003077/2010**
Case Name:    **BANK OF NY MELLON vs. HALL,ANTHONY W**
Case Type:     **RES FORECLOSURE FSC ELIGIBLE**
Track:            **Standard**

## Appearance Information:

| Appearance Date | Time | Court Date Purpose | Outcome Type | Justice Part | Re |
|---|---|---|---|---|---|
| 06/24/2015 | | Motion | MARKED OFF | KENNETH P. SHERMAN, PT. 67 MOTION TRIAL TERM 67 | NA |
| 06/24/2015 | | Motion | ADJOURNED | KENNETH P. SHERMAN, PT. 67 SUBSEQUENT MOTION PART | |
| 09/24/2014 | | Motion | MOTION DENIED | KENNETH P. SHERMAN, PT. 67 MOTION TRIAL TERM 67 | DI: |
| 08/13/2014 | | Motion | ADJOURNED | KENNETH P. SHERMAN, PT. 67 MOTION TRIAL TERM 67 | |
| 08/06/2014 | | Motion | ADJOURNED | KENNETH P. SHERMAN, PT. 67 SUBSEQUENT MOTION PART | |
| 06/05/2014 | | Supreme Trial | DISMISSED PRE-NOTE | KENNETH P. SHERMAN, PT. 67 JUDICIAL REFERRAL FORCLSURE 2 | AS |
| 02/06/2014 | | Supreme Initial (first time on) | STATUS CONFERENCE HELD | KENNETH P. SHERMAN, PT. 67 JUDICIAL REFERRAL FORCLSURE 2 | OR |
| 06/12/2013 | | Motion | MOTION GRANTED | KENNETH P. SHERMAN, PT. 67 MOTION TRIAL TERM 67 | |
| 06/06/2012 | | Supreme Trial | FSC - NOT SETTLED (R) | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF A | PT |
| 04/18/2012 | | Supreme Trial | FSC - CONTINUED (R) | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF A | CH |
| 03/07/2012 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF A | CH |





| | | | | | |
|---|---|---|---|---|---|
| 01/11/2012 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF A | CH DG |
| 10/27/2011 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF A | CH DG |
| 09/12/2011 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF A | CH DG |
| 06/16/2011 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF A | CH DG |
| 04/12/2011 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF A | CH DG |
| 03/03/2011 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF A | CH DG |
| 01/12/2011 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF A | CH DG |
| 11/22/2010 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF | CH DG |
| 10/12/2010 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETTLEMENT CONF | CH DG |
| 07/28/2010 | | Supreme Trial | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE SETT CONF-2PM | |
| 05/24/2010 | | Supreme Initial (first time on) | FSC ADJOURNED | KENNETH P. SHERMAN, PT. 67 FORECLOSURE PRE-SETT 2:30 | |

## WebCivil Supreme - Motion Detail

Court:           **Kings Supreme Court**
Index Number:    **0501413/2014**
Case Name:       **WELLS FARGO BANK, N.A., AS vs. HALL, ANTHONY W**
Case Type:       **E-FILED FORECLOSURE**
Track:           **Complex**

**Motion Information:**

| Motion Number | Date Filed | Filed By | Relief Sought | Submit Date | Answer Demanded | Status |
|---|---|---|---|---|---|---|
| 5 | 06/20/2018 | Plaintiff | JUDGMENT FORECLOSURE/SALE | | Yes | Decided: 08/13/2018 CASE DISPOSED Before Justice: PARTNOW-FOR.RESOLUTION PT 2 |
| 4 | 03/29/2016 | Plaintiff | DEFAULT JUDGMENT | | Yes | Decided: 06/14/2016 MOTION GRANTED Before Justice: PARTNOW-FOR.RESOLUTION PT 2 |
| 3 | 05/04/2015 | Defendant | DISMISSAL | | No | Decided: 09/10/2015 MARKED OFF Before Justice: ELLEN M. SPODEK, PT 63 |
| 2 | 07/25/2014 | Defendant | DISMISSAL | | No | Decided: 05/21/2015 MARKED OFF Before Justice: ELLEN M. SPODEK, PT 63 |
| 1 | 03/21/2014 | Defendant | DISMISSAL | 05/05/2014 | No | Decided: 05/12/2014 DENIED SHORT FORM ORDER Before Justice: JACK M. BATTAGLIA, PT 59 |





## WebCivil Supreme - Motion Detail

Court: **Kings Supreme Court**
Index Number: **0501413/2014**
Case Name: **WELLS FARGO BANK, N.A., AS vs. HALL, ANTHONY W**
Case Type: **E-FILED FORECLOSURE**
Track: **Complex**

**Motion Information:**

| Motion Number | Date Filed | Filed By | Relief Sought | Submit Date | Answer Demanded | Status |
|---|---|---|---|---|---|---|
| 5 | 06/20/2018 | Plaintiff | JUDGMENT FORECLOSURE/SALE | | Yes | Decided: 08/13/2018 CASE DISPOSED Before Justice: PARTNOW-FOR.RESOLUTION PT 2 |
| 4 | 03/29/2016 | Plaintiff | DEFAULT JUDGMENT | | Yes | Decided: 06/14/2016 MOTION GRANTED Before Justice: PARTNOW-FOR.RESOLUTION PT 2 |
| 3 | 05/04/2015 | Defendant | DISMISSAL | | No | Decided: 09/10/2015 MARKED OFF Before Justice: ELLEN M. SPODEK, PT 63 |
| 2 | 07/25/2014 | Defendant | DISMISSAL | | No | Decided: 05/21/2015 MARKED OFF Before Justice: ELLEN M. SPODEK, PT 63 |
| 1 | 03/21/2014 | Defendant | DISMISSAL | 05/05/2014 | No | Decided: 05/12/2014 DENIED SHORT FORM ORDER Before Justice: JACK M. BATTAGLIA, PT 59 |





*WebCivil Supreme - Appearance Detail*

Court: **Kings Supreme Court**
Index Number: **0501413/2014**
Case Name: **WELLS FARGO BANK, N.A., AS vs. HALL, ANTHONY W**
Case Type: **E-FILED FORECLOSURE**
Track: **Complex**

## Appearance Information:

| Appearance Date | Time | Court Date Purpose | Outcome Type | Justice Part |
|---|---|---|---|---|
| 02/21/2019 | | | PD - AUCTION NOT HELD | PARTNOW-FOR.RESOLUTION P' FORECLOSURE AUCTION PART |
| 08/13/2018 | | Motion | MOTION DECIDED-OPEN APPEARANCE | PARTNOW-FOR.RESOLUTION P' FOR. RESOLUTION PART 2-MOTION |
| 07/17/2018 | | Motion | ADJOURNED | PARTNOW-FOR.RESOLUTION P' SUBSEQUENT MOTION PART |
| 10/25/2016 | | Supreme Trial | STATUS CONFERENCE HELD | PARTNOW-FOR.RESOLUTION P' JUDICIAL REFERRAL FORCLSUF 2 |
| 06/14/2016 | | Motion | MOTION GRANTED | PARTNOW-FOR.RESOLUTION P' FOR. RESOLUTION PART 2-MOTION |
| 05/10/2016 | | Motion | ADJOURNED | PARTNOW-FOR.RESOLUTION P' SUBSEQUENT MOTION PART |
| 03/29/2016 | | Supreme Trial | STATUS CONFERENCE HELD | PARTNOW-FOR.RESOLUTION P' FORECLOSURE RESOLUTION P/ 2 |
| 02/26/2016 | | Supreme Trial | ADJOURNED | PARTNOW-FOR.RESOLUTION P' FORECLOSURE RESOLUTION P/ 2 |
| 11/18/2015 | | Supreme Trial | FSC - NOT SETTLED (U) | CAROLYN E. WADE FORECLOSURE SCREENING SE1 PT |
| 10/13/2015 | | Supreme Initial (first time on) | FSC - CONTINUED (U) | CAROLYN E. WADE FORECLOSURE PRE-SETT 2:30 |

| | | | | |
|---|---|---|---|---|
| 04/11/2014 | Motion | ADJOURNED | JACK M. BATTAGLIA, PT 59 MOTION PART | |
| 05/05/2014 | Motion | FULLY SUBMITTED | JACK M. BATTAGLIA, PT 59 MOTION TERM 59 | 7/4/14 DR-DUE |
| 08/15/2014 | Motion | ADJOURNED | ELLEN M. SPODEK, PT 63 SUBSEQUENT MOTION PART | |
| 09/16/2014 | Motion | ADJOURNED | ELLEN M. SPODEK, PT 63 MOTION TERM 63 | |
| 05/21/2015 | Motion | MARKED OFF | DEBRA SILBER MOTION TRIAL TERM 9 | |
| 06/04/2015 | Motion | ADJOURNED | ELLEN M. SPODEK, PT 63 SUBSEQUENT MOTION PART | |
| 07/21/2015 | Motion | ADJOURNED | ELLEN M. SPODEK, PT 63 MOTION TERM 63 | |
| 09/10/2015 | Motion | MARKED OFF | DEBRA SILBER MOTION TRIAL TERM 9 | |



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2019102800500004001E87C0

## RECORDING AND ENDORSEMENT COVER PAGE

| | PAGE 1 OF 7 |
|---|---|
| **Document ID:** 2019102800500004 | **Document Date:** 10-07-2019 |
| **Document Type:** INITIAL UCC1 | **Preparation Date:** 10-28-2019 |
| **Document Page Count:** 6 | **FIXTURE FILING** |

**PRESENTER:**
EIAL GIRTZ, PC
1010 NORTHERN BLVD, STE 232
MA-34956-OR-K
GREAT NECK, NY 11021

**RETURN TO:**
EIAL GIRTZ, PC
1010 NORTHERN BLVD, STE 232
GREAT NECK, NY 11021

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1673 | 31 | Partial Lot | 652 MACON STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____ Year_____ Reel____ Page_____ or File Number_____

### PARTIES

**DEBTOR:**
261 BRICKS LLC
1855 7 AVENUE, APT 5D
NEW YORK, NY 10026

**SECURED PARTY:**
BULLPATH CAPITAL CORP
111 GREAT NECK ROAD, STE 508
GREAT NECK, NY 11021

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 10-30-2019 10:55 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 20.00 | 2019000353434 | |
| Affidavit Fee: | $ | 0.00 | | |

*Jeanette M Hill*

*City Register Official Signature*

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Eial Girtz PC
1010 Northern Boulevard, Suite 232
Great Neck, NY 11021
(516) 466-6911

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: 261 BRICKS LLC | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS: 1486 Fulton Street, Suite 2 | CITY: Brooklyn, New York | STATE: NY | POSTAL CODE: 11216 | COUNTRY |
| 1d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR / 1e. TYPE OF ORGANIZATION: limited liability | 1f. JURISDICTION OF ORGANIZATION: New York | 1g. ORGANIZATIONAL ID#, if any | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS / ADD'L INFO RE ORGANIZATION DEBTOR / 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: Bullpath Capital Corp. | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS: 111 Great Neck Road, Suite 508, Great Neck, New York 11023 | CITY: Great Neck | STATE: NY | POSTAL CODE: 11023 | COUNTRY |

4. This FINANCING STATEMENT covers the following collateral:

SEE EXHIBIT "A" ANNEXED HERETO AND MADE A PART HEREOF

Location of property commonly known as:
652 Macon Street
Brooklyn, New York 11233

| | |
|---|---|
| Block: | 1673 |
| Lot: | 31 |
| County: | Kings |
| State: | New York |

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☒ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable)

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE) (optional) ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV05/22/02)

# UNIFORM COMMERCIAL CODE ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

**261 BRICKS LLC**

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| | | |

10. MISCELLANEOUS:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one name (11a OR 11b) - Do Not Abbreviate or Combine Names**

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE: ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID# ☐ NONE |
|---|---|---|---|---|
| | | | | |

**12. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR'S S/P's – insert only one secured party name (12a OR 12b)**

12a. ORGANIZATION'S NAME

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☒ fixture filing.**

14. Description of real estate:

652 Maxon Street
Brooklyn, New York 11233

| Block: | 1673 |
|---|---|
| Lot: | 31 |
| County: | Kings |
| State: | New York |

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

16. Additional collateral description:

17 Check only if applicable and check only one box

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

17. Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction – effective 30 years
☐ Filed in connection with a Public-Finance Transaction – effective 30 years

**FILING OFFICE COPY - UCC FINANCING STATEMENT ADDENDUM (FORM REV. 05/22/02)**

EXHIBIT A
TO
UNIFORM COMMERCIAL CODE FINANCING STATEMENT (FORM UCC-1)

**DEBTOR:**          **261 BRICKS LLC**

**SECURED PARTY:**    **BULLPATH CAPITAL CORP.**

**ITEM 4 *(CONTINUED)*:**  This FINANCING STATEMENT covers the following types or items of property (which, together with the Real Property, as defined below, constitutes and is referred to herein as the **"Property"**) in which Debtor has any interest, whether currently owned or hereafter acquired, relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the real property (the **"Real Property"**) described on Schedule **"1"** attached hereto (whether or not subsequently removed from the Real Property), including, without limitation, the follows:

(a)    all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b)    all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the **"Equipment"**), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interests" as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the **"Uniform Commercial Code"**), superior in lien to the lien of this Mortgage.

EXHIBIT A (Continued)

DEBTOR:             **261 BRICKS LLC**

SECURED PARTY:      **BULLPATH CAPITAL CORP.**

      (c)    all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and Improvements;

      (d)    all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "**Leases**") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the "**Rents**"), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

      (e)    all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

      (f)    all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "**Intangibles**"); and

      (g)    all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss,

damage, disposition, substitution or replacement of any of the foregoing.

**EXHIBIT A (Continued)**

**DEBTOR:**          **261 BRICKS LLC**

**SECURED PARTY:**   **BULLPATH CAPITAL CORP.**

**ITEM 6 *(CONTINUED)*: SIGNATURE OF DEBTOR:**

261 BRICKS LLC

By: _____
JOSEPH YAAKOVZADEH
MANAGING MEMBER

Date: October 7, 2019

**SCHEDULE 1 TO EXHIBIT A TO
UNIFORM COMMERCIAL CODE FINANCING
STATEMENT (FORM UCC-1)**

**DEBTOR:**              261 BRICKS LLC

**SECURED PARTY:**      BULLPATH CAPITAL CORP.

Legal Description of Property attached hereto

**MILLENNIUM ABSTRACT CORP.**
as agent for
Old Republic Title Insurance Company

**Schedule "A" (Description)**

Title Number: MA-34956-OR-K

ALL that certain plot piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows;

BEGINNING at a point of the Southerly side of Macon Street distant 382 feet Westerly from the Southwesterly corner of Ralph Avenue and Macon Street;

RUNNING THENCE Southerly and parallel with Ralph Avenue and part of the distance through a party wall 100 feet;

THENCE Westerly and parallel with Macon Street 18 feet;

THENCE Northerly and parallel with Ralph Avenue and part of the distance through a party wall 100 feet to the Southerly side of Macon Street;

THENCE Easterly along the Southerly side of Macon Street 18 feet to the point or place of BEGINNING.

FOR CONVEYANCING ONLY:
TOGETHER with all the right, title and interest, if any of the party of the first part, of, in and to the any streets and roads abutting the above described premises.

Premises commonly known as 652 Macon Street, Brooklyn, NY 11233, Section Block 1673 and Lot 31.

**New York City Department of Finance**

**Office of the City Register**

[Click help for additional instructions]
Selecting a help option will open new window

Detailed Document Information

**Current Search Criteria:**

**Borough:** BROOKLYN / KINGS
**Block:** 01673
**Lot:** 0031      **Unit:** N/A
**Date Range:** To Current Date
**Document Class:** All Document Classes

| DOCUMENT ID: 2019020600186001 | CRFN: | 2019000045381 | COLLATERAL: | N/A |
| # of PAGES: | 4 | REEL-PAGE: | N/A-N/A | EXPIRATION DATE: | N/A |
| DOC. TYPE: | DEED | FILE NUMBER: | N/A | ASSESSMENT | N/A |
|  |  |  |  | DATE: |  |
| DOC. DATE: | 1/10/2019 | RECORDED / FILED: 2/8/2019 11:53:44 AM | SLID #: | N/A |
| DOC. AMOUNT: $100.00 |  | BOROUGH: | QUEENS |  |  |
| % |  | RPTT #: | N/A |  |  |
| TRANSFERRED: 100% |  |  |  | MAP SEQUENCE #: N/A |  |
| MESSAGE: N/A |  |  |  |  |  |

| AME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTY |
|---|---|---|---|---|---|---|
| O, LEO | 2116 AVENUE J |  | BROOKLYN | NY | 11210 | US |

| AME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTY |
|---|---|---|---|---|---|---|
| NEW YORK | 55 BEATTIE PLACE, SUITE 100 |  | GREENVILLE | SC | 29601 | US |

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2019020600186001001E65FC

## RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 4

| Document ID: 2019020600186001 | Document Date: 01-10-2019 | Preparation Date: 02-06-2019 |
|---|---|---|
| Document Type: DEED | | |
| Document Page Count: 3 | | |

**PRESENTER:**
WEB TITLE AGENCY 18-020817 DD
** VICKIE CALAGNA ** PICKUP
755 JEFFERSON ROAD, #300
ROCHESTER, NY 14623
585-454-4770
MCENTI@WEBTITLE.US

**RETURN TO:**
WEB TITLE AGENCY 18-020817 DD
** VICKIE CALAGNA ** PICKUP
755 JEFFERSON ROAD, #300
ROCHESTER, NY 14623
585-454-4770
MCENTI@WEBTITLE.US

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1673 | 31 Entire Lot | | 652 MACON STREET |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or   DocumentID_____ or  _____ Year____ Reel____ Page____ or  File Number_____

### PARTIES

**GRANTOR/SELLER:**
LEO SALZMAN, ESQ
2116 AVENUE J
BROOKLYN, NY 11210

**GRANTEE/BUYER:**
THE BANK OF NEW YORK MELLON
55 BEATTIE PLACE, SUITE 100
GREENVILLE, SC 29601

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | |
| Taxable Mortgage Amount: | $ | 0.00 | $ | 125.00 |
| Exemption: | | | NYC Real Property Transfer Tax: | |
| TAXES: County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | $ | 3,584.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | |  |
| NYCTA: | $ | 0.00 | |  |
| Additional MRT: | $ | 0.00 | |  |
| TOTAL: | $ | 0.00 | |  |
| Recording Fee: | $ | 52.00 | |  |
| Affidavit Fee: | $ | 0.00 | |  |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed          02-08-2019 11:53
City Register File No.(CRFN):
2019000045381

*Jeanette M. Fill*

*City Register Official Signature*

### REFEREE'S DEED

**THIS REFEREE'S DEED** made on January 10, 2019, between:

**LEO SALZMAN, Esq.** having an office at 2116 AVENUE J, BROOKLYN, NY 11210, and being duly appointed Referee in the foreclosure action hereinafter mentioned, as grantor and

**THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11,** c/o Shellpoint Mortgage Servicing having an office for the conduct of business at 55 Beattie Place, Suite 100, Greenville, South Carolina 29601-2743, as grantee.

**WITNESSETH,** that LEO SALZMAN, Esq. being the Referee appointed in an action between

THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11,

Plaintiff,

and

ANTHONY W. HALL, CRIMINAL COURT OF THE CITY OF NEW YORK, KINGS SUPREME COURT, NANCY T. SUNSHINE COMMISSIONER OF JURORS, CITY OF NEW YORK DEPARTMENT OF TRANSPORTATION PARKING VIOLATIONS BUREAU, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, CITY OF NEW YORK TRANSIT AUTHORITY TRANSIT ADJUDICATION BUREAU THOMASINA BUCHANAN, JERRY FAULK, REGINA MOYER, AMINA BUCHANAN, TODD KRAMER, SAMANTHA FLOOD, PENELOPE BENNETT, VANESSA NIBLETT, LATOYA BURNS,

Defendants.

bearing Index Number 515066/2015, foreclosing the mortgage recorded on August 20, 2007, in the Office of the Clerk or Register of Kings County, in CRFN#: 2007000430263, pursuant to the Judgment entered at a Special Term of the Supreme Court of said County, on November 8, 2018, and;

In consideration of the sum of One Hundred and .00/100 ($100.00) Dollars paid by THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11, being the highest sum bid at the sale under such Judgment, does hereby grant and convey unto THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11, its successors and assigns the following described premises:

### SEE SCHEDULE A ANNEXED HERETO

Known as 652 MACON STREET, BROOKLYN, NY 11233, located in the County of Kings and State of New York.

18-020817

# REAL PROPERTY SERVICING, LLC

## TITLE NO. FC15-LPS153

### SCHEDULE A

### LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Macon Street distant 382 feet westerly from the southwesterly corner of Ralph Avenue and Macon Street;

RUNNING THENCE southerly and parallel with Ralph Avenue and part of the distance through a party wall 100 feet;

THENCE westerly and parallel with Macon Street 18 feet;

THENCE northerly and parallel with Ralph Avenue and part of the distance through another party wall 100 feet to the southerly side of Macon Street;

THENCE easterly along the southerly side of Macon Street 18 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY
Premises also known as:     652 Macon Street
                            Brooklyn  NY 11233

Block 1673 Lot 31

County of:                  KINGS

**TO HAVE AND TO HOLD** said premises hereby conveyed unto THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11, and its successors and assigns forever.

**SUBJECT TO** all unpaid taxes, assessments and water rates which are now a lien on the premises and to any prior mortgages of record.

**IN WITNESS WHEREOF** LEO SALZMAN, Esq., as Referee, has hereunto set his/her hand the day and year first above written.

LEO SALZMAN, Esq., Referee

STATE OF NEW YORK          )
COUNTY OF KINGS            ) ss.:

On the _10_ day of _January_ in the year _2019_ before me, the undersigned, a notary public in and for said state, personally appeared LEO SALZMAN, Esq., Referee, personally known to me or proved to me on the basis satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public
RICHARD J. CANTWELL
Notary Public, State of New York
No. 01CA6291993
Qualified in Suffolk County
Commission Expires November 27, 202_1_

**REFEREE'S DEED IN FORECLOSURE**

Title No.

LEO SALZMAN, ESQ., REFEREE

            to

THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11

| | |
|---|---|
| Block: | 1673 |
| Lot: | 31 |
| County: | KINGS |

SEAL

Record & Return
WebTitle Agency
755 Jefferson Road, Suite 300
Rochester, NY 14623

DLG File #: 37367

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2019020600186001001SAB7D

**SUPPORTING DOCUMENT COVER PAGE**                                    **PAGE 1 OF 1**

| | | |
|---|---|---|
| **Document ID: 2019020600186001** | Document Date: 01-10-2019 | Preparation Date: 02-06-2019 |
| Document Type: DEED | | |

**ASSOCIATED TAX FORM ID:**    2019010400011

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 1 |

20190104000112010 2

# CITY REGISTER
FEB 07 2019



**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**

**FOR CITY USE ONLY**

| C1. County Code | | C2. Date Deed | | | | C3. Book | | C4. Page | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Recorded | Month | Day | Year | OR | | | |
| | | | | | | CRFN | | | |

**PROPERTY INFORMATION**

1. Location — MACON STREET | 652 | BROOKLYN | 11233
   STREET NUMBER | STREET NAME | BOROUGH | ZIP CODE

2. Buyer — THE BANK OF NEW YORK MELLON
   Name — LAST NAME / COMPANY | FIRST NAME
   — LAST NAME / COMPANY | FIRST NAME

3. Tax — Indicate where future Tax Bills are to be sent
   Billing — if other than buyer address (at bottom of form)
   Address — LAST NAME / COMPANY | FIRST NAME
   STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE

4. Indicate the number of Assessment | # of Parcels   OR   Part of a Parcel
   Roll parcels transferred on the deed

   4A. Planning Board Approval - N/A for NYC
   4B. Agricultural District Notice - N/A for NYC

5. Deed
   Property — X | | | OR | | |
   Size — FRONT FEET | DEPTH | | ACRES

6. Check the boxes below as they apply
   6. Ownership Type is Condominium
   7. New Construction on Vacant Land

8. Seller — SALZMAN, ESQ. | LEO
   Name — LAST NAME / COMPANY | FIRST NAME
   — LAST NAME / COMPANY | FIRST NAME

9. Check the box below which most accurately describes the use of the property at the time of sale:

A | One Family Residential
B | 2 or 3 Family Residential
C | Residential Vacant Land
D | Non-Residential Vacant Land
E | Commercial
F | | |
G | Entertainment / Amusement
H | Community Service
I | Industrial
| | Public Service

**SALE INFORMATION**

10. Sale Contract Date | Month | Day | Year
    | 10 | | 2019

11. Date of Sale / Transfer | Month | Day | Year
    | 10 | | 2019

12. Full Sale Price $ | | 8 | 6 | 9 | 2 |
    ( Full Sale Price is the total amount paid for the property including personal property.
    This payment may be in the form of cash, other property or goods, or the assumption of
    mortgages or other obligations.) Please round to the nearest whole dollar amount.

13. Indicate the value of personal
    property included in the sale | | | | |

14. Check one or more of these conditions as applicable to transfer:
A | Sale Between Relatives or Former Relatives
B | Sale Between Related Companies or Partners in Business
C | One of the Buyers is also a Seller
D | Buyer or Seller is Government Agency or Lending Institution
E | Deed Type not Warranty or Bargain and Sale ( Specify Below )
F | Sale of Fractional or Less than Fee Interest ( Specify Below )
G | Significant Change in Property Between Taxable Status and Sale Dates
H | Sale of Business is Included in Sale Price
I | Other Unusual Factors Affecting Sale Price ( Specify Below )
J | None

**ASSESSMENT INFORMATION** – Data should reflect the latest Final Assessment Roll and Tax Bill

16. Building Class | B 3 | 17. Total Assessed Value (of all parcels in transfer) | 2 0 0 6 2 |

17. Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional identifier(s) )
BROOKLYN 1673 31

**CERTIFICATION** | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

BUYER

BUYER'S ATTORNEY

50 BEATTIE PLACE, SUITE 100

BUYER SIGNATURE                    1 |29|2019
                                   DATE

LAST NAME

FIRST NAME

STREET NUMBER     STREET NAME (AFTER SALE)

AREA CODE     TELEPHONE NUMBER

GREENVILLE          SC        29601

SELLER

CITY OR TOWN          STATE     ZIP CODE

SELLER SIGNATURE                DATE

Maria Sideris ESq

Leo Salzman Referee

2019010400011201

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

**CITY REGISTER**

**FEB 07 2019**

State of New York  } SS.:
County of

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

_____**652 MACON STREET**_____ , _____ ,
Street Address Unit/Apt.

____**BROOKLYN**____ — New York, ____**1673**____ ____**31**____ (the "Premises");
Borough                          Block          Lot

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

Leo Salzman esq. Referee                    Maria Sicters, esq.
Name of Grantor (Type or Print)                 Druckman Law Group PLLC
                                                 Name of Grantee (Type or Print)

Signature of Grantor                             Signature of Grantee

Sworn to before me                               Sworn to before me
this __10__ day of __January__ 20_19_            this __20th__ day of __January__ 20_19_

RICHARD J. CANTWELL                              MARY MARSH
Notary Public, State of New York                 NOTARY PUBLIC-STATE OF NEW YORK
No. 01CA6201956                                  No. 01MA6120260
Qualified in Suffolk County                      Qualified in Nassau County
Commission Expires November 27, 20__             My Commission Expires December 20, 20__

**SEAL**                                         **SEAL**

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

2019010400011101



The City of New York
Department of Environmental Protection
Bureau of Customer Services
59-17 Junction Boulevard
Flushing, NY  11373-5108

## Customer Registration Form for Water and Sewer Billing

**Property and Owner Information:**

(1) Property receiving service: BOROUGH: **BROOKLYN**    BLOCK: 1673    LOT: 31

(2) Property Address: 652 MACON STREET, BROOKLYN, NY 11233

(3) Owner's Name:    THE BANK OF NEW YORK MELLON, FKA THE BANK...

Additional Name:

**Affirmation:**

☑ Your water & sewer bills will be sent to the property address shown above.

**Customer Billing Information:**

**Please Note:**

A. Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

B. Original bills for water and/or sewer service will be mailed to the owner, at the property address or to an alternate mailing address. DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

**Owner's Approval:**

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:

Signature: _____    Date (mm/dd/yyyy) _____

Name and Title of Person Signing for Owner, if applicable:

CS-7CRF-ACRIS  REV. 8/08

2019010400011101

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| The Bank of New York Mellon, f/k/a Bank of New York, as Trustee, for the Certificateholders of CWALT, Inc. an Alternative Loan Trust 2007-OA11, Mortgage Pass-Through Certificates, Series 2007-OA11 | Summons with Notice of Action to Foreclose a Mortgage |
| Plaintiff, | Index Number |
| -against- | Filed on |
| Anthony W. Hall, Criminal Court of the City of New York, Kings Supreme Court, Nancy T. Sunshine Commissioner of Jurors, City of New York Department of Transportation Parking Violations Bureau, City of New York Environmental Control Board, City of New York Transit Authority Transit Adjudication Bureau and "JOHN DOE #1" through "JOHN DOE #12," the last twelve names being fictitious and unknown to Plaintiff, the person or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein | The basis of venue is the location of the subject premises. |
| Defendant(s). | |

**WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within 20 days after the service of this summons exclusive of the day of service or within 30 days after completion of service where service is made in any other manner than by personal delivery within the State. The United States of America, if designated as a defendant in this action, may answer or appear within sixty (60) days of service hereof. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

**NOTICE**
**YOU ARE IN DANGER OF LOSING YOUR HOME**

If you do not respond to this summons and complaint by serving a copy of the answer on the attorney for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home.

Speak to an attorney or go to the court where your case is pending for further information on how to answer the summons and protect your property.

**Sending a payment to your mortgage company will not stop this foreclosure action.**

**YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.**

Dated: December 4, 2015
      Rockville Centre, New York

Ted Eric May, Esq.
Sheldon May & Associates, P.C.
Attorneys for Plaintiff
Office & P.O. Address
255 Merrick Road
Rockville Centre, New York 11570
(516) 763-3200

# HELP FOR HOMEOWNERS
# IN FORECLOSURE

NEW YORK STATE LAW REQUIRES THAT WE SEND YOU THIS NOTICE ABOUT THE FORECLOSURE PROCESS. PLEASE READ IT CAREFULLY.

## SUMMONS AND COMPLAINT

YOU ARE IN DANGER OF LOSING YOUR HOME. IF YOU FAIL TO RESPOND TO THE SUMMONS AND COMPLAINT IN THIS FORECLOSURE ACTION, YOU MAY LOSE YOUR HOME. PLEASE READ THE SUMMONS AND COMPLAINT CAREFULLY. YOU SHOULD IMMEDIATLEY CONTACT AN ATTORNEY OR YOUR LOCAL LEGAL AID OFICE TO OBTAIN ADVICE ON HOW TO PROTECT YOURSELF.

## SOURCES OF INFORMATION AND ASSISTANCE

THE STATE ENCOURAGES YOU TO BECOME INFORMED ABOUT YOUR OPTIONS IN FORECLOSURE.

IN ADDITION TO SEEKING ASSISTANCE FROM AN ATTORNEY OR LEGAL AID OFFICE, THERE ARE GOVERNMENT AGENCIES AND NON-PROFIT ORGANIZATIONS THAT YOU MAY CONTACT FOR INFORMATION ABOUT POSSIBLE OPTIONS, INCLUDING TRYING TO WORK WITH YOUR LENDER DURING THIS PROCESS.

TO LOCATE AN ENTITY NEAR YOU, YOU MAY CALL THE TOLL-FREE HELPLINE MAINTAINED BY THE NEW YORK STATE BANKING DEPARTMENT AT 1-877-226-5697 OR VISIT THE DEPARTMENT'S WEBSITE AT www.DFS.NY.GOV

# FORECLOSURE RESCUE SCAMS

BE CAREFUL OF PEOPLE WHO APPROACH YOU WITH OFFERS TO "SAVE" YOUR HOME. THERE ARE INDIVIDUALS WHO WATCH FOR NOTICES OF FORECLOSURE ACTIONS IN ORDER TO UNFAIRLY PROFIT FROM A HOMEOWNER'S DISTRESS. YOU SHOULD BE EXTREMELY CAREFUL ABOUT ANY SUCH PROMISES AND ANY SUGGESTIONS THAT YOU PAY THEM A FEE OR SIGN OVER YOUR DEED. STATE LAW REQUIRES ANYONE OFFERING SUCH SERVICES FOR PROFIT TO ENTER INTO A CONTRACT WHICH FULLY DESCRIBES THE SERVICES THEY WILL PERFORM AND FEES THEY WILL CHARGE, AND WHICH PROHIBITS THEM FROM TAKING ANY MONEY FROM YOU UNTIL THEY HAVE COMPLETED ALL SUCH PROMISED SERVICES.

# Notice to Tenants of Buildings in Foreclosure

New York State Law requires that we provide you this notice about the foreclosure process. Please read it carefully.

We, Select Portfolio Servicing, Inc. are the foreclosing party and are located at 3217 S. Decker Lake Drive, Salt Lake City, Utah 84119.

The dwelling where your apartment is located is the subject of a foreclosure proceeding. If you have a lease, are not the owner of the residence, and the lease requires payment of rent that at the time it was entered into was not substantially less than the fair market rent for the property, you may be entitled to remain in occupancy for the remain der of your lease term. If you do not have a lease, you will be entitled to remain in your home until ninety days after any person or entity who acquires title to the property provides you with a notice as required by section 1305 of the Real Property Actions and Proceedings Law. The notice shall provide information regarding the name and address of the new owner and your rights to remain in your home. These rights are in addition to any others you may have if you are a subsidized tenant under federal, state or local law or if you are a tenant subject to rent control, rent stabilization or a federal statutory scheme.

ALL RENT-STABILIZED TENANTS AND RENT-CONTROLLED TENANTS ARE PROTECTED UNDER THE RENT REGULATIONS WITH RESPECT TO EVICTION AND LEASE RENEWALS. THESE RIGHTS ARE UNAFFECTED BY A BUILDING ENTERING FORECLOSURE STATUS. THE TENANTS IN RENT-STABILIZED AND RENT-CONTROLLED BUILDINGS CONTINUE TO BE AFFORDED THE SAME LEVEL OF PROTECTION EVEN THOUGH THE BUILDING IS THE SUBJECT OF FORECLOSURE. EVICTIONS CAN ONLY OCCUR IN NEW YORK STATE PURSUANT TO A COURT ORDER AND AFTER A FULL HEARING IN COURT. IF YOU NEED FURTHER INFORMATION, PLEASE CALL THE NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES' TOLL-FREE HELPLINE AT 1-877-226-5697 OR VISIT THE DEPARTMENT'S WEBSITE AT WWW.DFS.NY.GOV.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| The Bank of New York Mellon, f/k/a Bank of New York, as Trustee, for the Certificateholders of CWALT, Inc. an Alternative Loan Trust 2007-OA11, Mortgage Pass-Through Certificates, Series 2007-OA11 <br><br> Plaintiff, <br><br> -against- <br><br> Anthony W. Hall, Criminal Court of the City of New York, Kings Supreme Court, Nancy T. Sunshine Commissioner of Jurors, City of New York Department of Transportation Parking Violations Bureau, City of New York Environmental Control Board, City of New York Transit Authority Transit Adjudication Bureau and "JOHN DOE #1" through "JOHN DOE #12," the last twelve names being fictitious and unknown to Plaintiff, the person or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein, <br><br> Defendants. | Verified Complaint for an Action to Foreclose a Mortgage <br><br> Index Number: |

The Bank of New York Mellon, f/k/a Bank of New York, as Trustee, for the Certificateholders of CWALT, Inc. an Alternative Loan Trust 2007-OA11, Mortgage Pass-Through Certificates, Series 2007-OA11 by its attorneys, Sheldon May & Associates, complaining of Defendant(s), respectfully alleges upon information and belief as follows:

I.    **Parties**

A.    Upon information and belief, that all times hereinafter mentioned, the Plaintiff was and still is a statutory trust organized and existing under the laws of the State of its incorporation, and is duly authorized to conduct business in the State of New York. Anthony W. Hall, delivered to Countrywide Home Loans, Inc., a note (a copy of which is attached hereto) dated June 26, 2007.

B.    As security for the note, Anthony W. Hall delivered to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc., a mortgage (a copy of which is attached hereto) dated June 26, 2007 which was recorded in the Clerk's Office where the property is located on August 20, 2007, in Liber/Reel/Book/Instrument 2007000430263 of Mortgages.

C.    All other named defendants and "John Does," have or may claim to have some interest in, or lien upon said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of the mortgage, or may have accrued prior to said mortgage, but is subject and subordinate thereto to the lien of said mortgage.

D.    The People of the State of New York, The State Tax Commission, The Environmental Control Board, The Environmental Fire Control Board, The Industrial Commissioner of the State of New York, The Parking Violations Bureau, and all other agencies or instrumentalities of the Federal (the United State

of America), State or local government (by whatever name designated) if made parties to this action and if appearing in the caption are made parties solely of the judgment hereinafter set forth and filed as noted in the amount set forth or by virtue of any estate taxes: SEE ATTACHED JUDGMENT(S)(If Any.)

E.    Upon information and belief, if applicable, any defendant captioned as a corporation is believed to be a New York corporation or licensed to do business in New York.

**II.  Standing**

A.    The Bank of New York Mellon, f/k/a Bank of New York, as Trustee, for the Certificateholders of CWALT, Inc. an Alternative Loan Trust 2007-OA11, Mortgage Pass-Through Certificates, Series 2007-OA11, directly or through an agent, has possession and control of the promissory note. If applicable, The Bank of New York Mellon, f/k/a Bank of New York, as Trustee, for the Certificateholders of CWALT, Inc. an Alternative Loan Trust 2007-OA11, Mortgage Pass-Through Certificates, Series 2007-OA11 may have been delegated the authority to institute a foreclosure action. The promissory note is either made payable to The Bank of New York Mellon, f/k/a Bank of New York, as Trustee, for the Certificateholders of CWALT, Inc. an Alternative Loan Trust 2007-OA11, Mortgage Pass-Through Certificates, Series 2007-OA11 or has been duly endorsed or contains an allonge. The Bank of New York Mellon, f/k/a Bank of New York, as Trustee, for the Certificateholders of CWALT, Inc. an Alternative Loan Trust 2007-OA11, Mortgage Pass-Through Certificates, Series 2007-OA11 is either the original mortgagee or assignee of the security instrument for the subject loan. The Bank of New York Mellon, f/k/a Bank of New York, as Trustee, for the Certificateholders of CWALT, Inc. an Alternative Loan Trust 2007-OA11, Mortgage Pass-Through Certificates, Series 2007-OA11 has the right to foreclose the subject note and security instrument. The note was negotiated to the Plaintiff and the mortgage was assigned to the Plaintiff. The original mortgage was given to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc., on June 26, 2007 which was recorded in the Clerk's Office where the property is located on August 20, 2007, in Liber/Reel/Book/Instrument 2007000430263 of Mortgages. Said mortgage was then assigned from Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc., to The Bank of New York Mellon, f/k/a Bank of New York, as Trustee, for the Certificateholders of CWALT, Inc. an Alternative Loan Trust 2007-OA11, Mortgage Pass-Through Certificates, Series 2007-OA11, and the Assignment of Mortgage was dated January 22, 2010 and recorded in the Clerk's Office where the property is located on February 17, 2010 in Liber/Reel/Book/Instrument/CRFN 2010000055119 of Mortgages. A copy of which is attached hereto.

B.    Said Mortgage was duly recorded in the Clerk's Office / City Register's Office in the County where the property is located and any applicable recording tax was duly paid at the time of recording.

C.    The original Mortgage given on June 26, 2007 and recorded in the Clerk's Office where the property is located on August 20, 2007, in Liber/Reel/Book/Instrument 2007000430263 of Mortgages was modified.

**III.**   **Borrower's Non-Payment**

    **A.**   Anthony W. Hall, failed to comply with the terms, covenants and conditions of the said Note by defaulting in the payment of the monthly installment due on December 1, 2008, and each subsequent month thereafter, all of which have been unpaid for more than thirty (30) days and remain unpaid.

    **B.**   Plaintiff and/or their servicing agent sent a default letter in accordance with paragraph 22 of the mortgage that is the subject of the within action.

    **C.**   Plaintiff and/or their servicing agent sent out a 90 day default notice to the borrower in full compliance with the requirements of RPAPL Section 1304.

    **D.**   The following amounts are now due and owing on said mortgage and the said instrument secured by said mortgage, no part of any of which has been paid although duly demanded: Entire Principal Balance in the amount of $630,238.51 with interest from November 1, 2008 at the current interest rate of 5.875%, along with all other fees and costs permitted by the note and mortgage.

    **E.**   By reason of the default in the payment of the monthly installment of principal and interest, among other things, as hereinafter set forth, Plaintiff, the holder of the aforementioned note and mortgage, and/or their agents have elected to and hereby accelerate the mortgage and declare the entire mortgage indebtedness immediately due and payable.

    **F.**   The mortgage provides for the payment of counsel fees incurred by the Plaintiff in any action to foreclose the mortgage. The Plaintiff has incurred and will incur counsel fees until the termination of the foreclosure action.

**IV.**   **Compliance with State Law**

    **A.**   Upon information and belief, if applicable, Plaintiff has complied with all of the provisions of section five hundred ninety-five-a of the banking law and any rules and regulations promulgated there under, section six-l or six-m of the banking law.

    **B.**   Upon information and belief, if applicable, the Plaintiff and/or their agents has/have complied with RPAPL §§1304 and 1306.

**V.**   **Note and Mortgage Provisions**

    **A.**   In the event that Plaintiff possesses any other lien(s) against said mortgaged premises either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause(s) of action set forth in this complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

    **B.**   Plaintiff shall not be deemed to have waived, altered, released, or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective.

    **C.**   Plaintiff believes that during the pendency of this action, in order to protect the security of the within mortgage, it may be compelled to make advances for the following item(s), including but not limited to, taxes, assessments, water, prior liens and insurance premiums that are or may become due, plus interest, as provided for in the mortgage.

## VI. Miscellaneous Provisions

A.  Upon information and belief there is an action pending under 3077/2010 that should have been discontinued. Therefore request is made that the prior actions be discontinued, the prior notice of pendency canceled and teh Judgment of Foreclosure and Sale vacate if applicable.

B.  Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, said premises should be sold subject to the following: (1) Any state of facts an accurate survey or personal inspection would disclose. (2) Covenants, restrictions, easements, declarations, rights of way, agreements and reservations, if any, of record and to any and all violations thereof. (3) Any and all building and zoning regulations, restrictions, ordinances and amendments thereto of the municipality, the State, the Federal Government, or any agency, bureau, commission or department in which said premises are situated, and to any violations or notices of violations of the same, including, but not limited to, reapportionment of lot lines, and vault charges, if any. (4) The rights of tenants, if any, whose tenancy has not been foreclosed by this action. (5) The rights of any lienors or prior mortgagees of record whose liens have not been foreclosed herein, if any. (6) The right of the United States of America to re-deem if a federal tax lien is filed against the premises as of the date of sale hereunder. (7) The physical condition of any buildings or structures on the premises as of the date of sale hereunder. (8) Conditional bills of sale, if any. (9) Any and all orders or requirements issued by any governmental body having jurisdiction against or affecting said premises and violations of the same. (10) Rights of any Defendant(s) pursuant to CPLR section 317, CPLR Section 2003 and CPLR Section 5015, if any; (11) Any and all Hazardous Materials in the Premises including, but not limited to, flammable explosives, radioactive materials, hazardous wastes, asbestos or any material containing asbestos and toxic substances. (12) Outstanding condominium charges, if any. (13) The rights of holders of security in fixtures as defined by the Uniform Commercial Code. (14) Taxes, assessments and water rates which are liens on the premises at the time of sale, with accrued interest or penalties thereon. (15) Prior mortgage liens of record, if any, and any advances and arrears there under.

**WHEREFORE,** the Plaintiff demands judgment: (1) Adjudging and decreeing the amounts due the Plaintiff for principal, interest, costs, late charges, expenses of sale, allowances and disbursements, reasonable attorney's fees if provided for in the mortgage and any monies advanced and paid which are secured by the mortgage. (2) The Defendant(s) and any and all persons claiming by, through or under them and every other person or entity whose right, title, conveyance or encumbrance is subsequent to or subsequently recorded, or whose lien is being challenged by being a defendant in this action, be barred and foreclosed of and from all right, claim, lien, interest or equity of redemption in and to said mortgage premises. (3) The said mortgage premises, or such part thereof as may be necessary to raise the amounts due as

aforesaid, be decreed to be sold according to law subject to the provisions of this complaint. (4) That out of the monies arising from the sale of the mortgaged property, the Plaintiff may be paid the amounts due on said note and mortgage, plus those items referenced in the complaint, together with any sums expended, with interest as allowed by law upon any advances from the dates of the respective payments, so far as the amount of such money properly applicable will pay the same. (5) That any of the parties to this action may become a purchaser upon the sale of the mortgaged premises. (6) The court, if requested, appoint a receiver of the rents and profits of said premises with the usual powers and duties. (7) The Defendant(s) in this complaint and any original or subsequent obligor(s) so named in this action, may be adjudged to pay any deficiency that may remain after applying all of said monies so applicable thereto, unless the debt has been listed and discharged in a bankruptcy petition, or unless the Plaintiff is unable to produce a copy of the note, in which case no deficiency judgment will be sought. (8) In the event Plaintiff possesses any other liens against the premises, they shall not be merged. Plaintiff specifically reserves its right to share in any surplus monies arising from the sale of the subject premises by virtue of its position as a judgment or other lien creditor, excluding the mortgage being foreclosed herein. (9) The Plaintiff have such relief as requested in the complaint. (10) The Plaintiff may have such other and further relief as may be just, equitable and proper.

Sheldon May & Associates, P.C.

By: Ted Eric May, Esq.
255 Merrick Road
Rockville Centre, New York 11570
(516) 763 - 3200

Verification

State of New York, County of Nassau            ) ss:

Ted Eric May, the undersigned, an attorney duly admitted to practice before the Courts of this State, respectfully shows:

That he is a member of the law firm of Sheldon May & Associates, P.C., and the attorneys of record for the Plaintiff in the above entitled action.

That he has read the foregoing Verified Complaint and knows the contents thereof, and the same is true to affiant's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters believes them to be true.

The grounds of affiant's belief as to all matters not stated upon affiant's knowledge are based upon the records of Plaintiff in affiant's possession or the business records of Plaintiff and/or their servicer/agent.

The reason that this verification is made by the undersigned and not by the Plaintiff is because Plaintiff is domiciled outside Nassau County; that being the County in which your affiant maintains an office for the practice of law.

The undersigned affirms that the foregoing statements are true under penalty of perjury.

Dated: December 4, 2015
       Rockville Centre, New York

_____
Ted Eric May, Esq.

# REAL PROPERTY SERVICING, LLC

## TITLE NO. FC15-LPS153

### SCHEDULE C

### NECESSARY PARTY DEFENDANTS

This certification is made on the assumption that all parties are to be personally served in the proposed action. If any of the persons hereinafter named be dead, their legal representatives and successors in interest should be made parties defendant after whose rights are subordinate to the mortgage to be foreclosed such persons should also be made parties defendant after search has been amended. If any leases, mortgages or other liens recorded prior to the period covered by this search, but which, by reason of subordination clauses contained therein or otherwise, are in fact subordinate to the lien of the mortgage to be foreclosed, all persons interested in said leases, mortgages or other liens should also be made parties defendant after search has been amended.

If the United States of America, State of New York or City of New York or any of its agencies, are made parties, the complaint must set forth the reason therefore in detail. (See R. P. A. and P. L. Sec 202 and 202A and 28 U.S.C.A. 2410.)

The addresses of parties herein given, were obtained from the record and are not represented to be the present addresses of the parties.

Consideration should be given to the desirability of naming as defendants the obligor named in the bond or in any extension, assumption or guaranty agreement.

All occupants of the premises herein described should be made parties defendant.

The Company should be requested to continue searches to the date of filing lis pendens.

| PARTIES DEFENDANT | INTEREST IN PREMISES |
|---|---|
| 1. John Doe and Jane Doe | Tenants and persons in possession |
| 2. Anthony W. Hall<br>652 Macon Street<br>Brooklyn, New York 11233 | Certified Owner/Mortgagor and Plaintiff in Action No. 12274/2014. |
| 3. Criminal Court of the City of New York<br>120 Schermerhorn Street<br>Brooklyn, New York 11201 | Judgment Creditor |

# REAL PROPERTY SERVICING, LLC

## TITLE NO. FC15-LPS153

### SCHEDULE C
(continued)
### NECESSARY PARTY DEFENDANTS

4. Kings Supreme Court                               Judgment Creditor
   320 Jay Street
   Brooklyn, New York  11201

5. Nancy T. Sunshine-Comm. of Jurors          Judgment Creditor
   360 Adams Street
   Brooklyn, New York  11201

6. City of New York                            Judgment Creditor
   Department of Transportation
   Parking Violations Bureau
   100 Church Street
   New York, New York 10007

7. City of New York                            Judgment Creditor
   Environmental Control Board
   59-17 Junction Boulevard
   Corona, New York 11369

8. City of New York Transit Authority         Judgment Creditor
   Transit Adjudication Bureau
   505 Fulton Street
   Brooklyn, New York 11201

Prepared by: LUIS MUNOZ

# ORIGINAL

## MONTHLY ADJUSTABLE RATE PAYOPTION NOTE
### (MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

JUNE 26, 2007                BRENTVILLE                NEW YORK
[Date]                       [City]                    [State]

692 MACON ST., BROOKLYN, NY 11233-1518
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 600,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal may increase as provided under the terms of this Note but will never exceed 110 percent of the Principal amount I originally borrowed. This is called the "Maximum Principal Limit". Lender is COUNTRYWIDE HOME LOANS, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will initially pay interest at a yearly rate of 6.875 %. This is my initial interest rate and is the rate for determining the interest I owe until it changes as provided below.

The interest rate used to calculate the initial Minimum Payment described in Section 3 is 1.000 %. When I make a Minimum Payment which is based on an interest rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."

**(B) Interest Rate Change Dates**

The interest rate I owe may change on the first day of the first scheduled monthly payment, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

On each Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (G.13)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available

PayOption MTA No Intro Period Note
1E220C3X (10/06)(d/i)

twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **THREE & 40/100** percentage point(s) **3.400** (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than **9.950** % or lower than the Margin. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section7(B) of this Note.

**3. PAYMENTS**

**(A). Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the **first** day of each month beginning on **AUGUST 01, 2007** . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **JULY 01, 2037** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 660694, Dallas, TX 75266-0694** or at a different place if required by the Note Holder.

**(B) Amount of My Initial Minimum Payment**

The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. Each of my initial Minimum Payments until the first Payment Change Date will be in the amount of U.S. $ **1,929.96** , unless adjusted under Section 3(F). If the Minimum Payment is not sufficient to cover the amount of the interest due, negative amortization will occur.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the **first** day of **AUGUST, 2009** , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The Minimum Payment is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) applies, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than **7.5000** % of my prior monthly payment. This limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by multiplying the amount of my Minimum Payment due the month preceding the Payment Change Date by the number **1.075** . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the Payment Cap described in Section 3(D), my Minimum Payment could be insufficient to pay the interest portion of the monthly payment that would repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Principal Limit equal to ONE HUNDRED TEN percent ( 110 %) of the Principal amount I originally borrowed. On the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the then-current interest rate.

**(G)  Required Full Payment**

On the tenth                     Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") that are greater than the Minimum Payment. The Payment Options are calculated using the new interest rate in accordance with Section 3(C). The following Payment Options may be provided:

(i)   Interest Only Payment: the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  Amortized Payment: the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. Because the interest rate may change monthly, the amounts of each of these Payment Options may also change monthly.

**4.   NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction that could result from my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be

* PayOption MTA No Intro Period Note
4E221-XX (10/05)                                        Page 3 of 5

reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be         2.000  % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B)    Default**

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

**(C)    Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)    No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    DOCUMENT CORRECTION**

In the event that Note Holder at any time discovers that this Note, Security Instrument, Addenda, Rider or any other document related to this loan is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan, or otherwise contains an error, such as a clerical mistake, calculation error, computer error, printing error, electronic transmission error, or similar error, I agree, upon notice from Note Holder, to re-execute any documents that are necessary to replace or correct any such documents and return them within ten (10) days of receipt. I also agree that I will not hold Lender responsible for any damages which result from any such error.

**18.  SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  -Borrower
ANTHONY W. HALL

PAY TO THE ORDER OF                        _____  -Borrower

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC               _____  -Borrower

BY _Michele Sjolander__                    _____  -Borrower
    MICHELE SJOLANDER
    EXECUTIVE VICE PRESIDENT

* PayOption MTA No Intro Period Note
1E220-XX (10/05)                    Page 8 of 8

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2007071100797001001E3C2B

## RECORDING AND ENDORSEMENT COVER PAGE

| | | PAGE 1 OF 24 |
|---|---|---|
| Document ID: 2007071100797001 | Document Date: 06-26-2007 | |
| Document Type: MORTGAGE | | Preparation Date: 07-11-2007 |
| Document Page Count: 23 | | |

**PRESENTER:**
EMPIRE LAND SERVICES CORP. (PICK UP)
AS AGENT FOR STEWART TITLE INSURANCE
COMPANY
555 BROAD HOLLOW ROAD, SUITE 111
MELVILLE, NY 11747
631-752-8320

**RETURN TO:**
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O. BOX 10423
VAN NUYS, CA 91410

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1673 | 31 | Entire Lot | 652 MACON STREET |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year ____ Reel ___ Page____ or File Number_____

### PARTIES

**MORTGAGOR/BORROWER:**
ANTHONY W. HALL
652 MACON STREET
BROOKLYN, NY 11233

**MORTGAGEE/LENDER:**
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.
PO BOX 2026
FLINT, MI 48501

### FEES AND TAXES

| Mortgage | | | |
|---|---|---|---|
| Mortgage Amount: | $ | 600,000.00 | |
| Taxable Mortgage Amount: | $ | 600,000.00 | |
| Exemption: | | | |
| TAXES: County (Basic): | $ | 3,000.00 | |
| City (Additional): | $ | 6,750.00 | |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 1,500.00 | |
| MTA: | $ | 1,770.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 13,020.00 | |
| Recording Fee: | $ | 152.00 | |
| Affidavit Fee: | $ | 0.00 | |

| Filing Fee: | | |
|---|---|---|
| | $ | 0.00 |
| NYC Real Property Transfer Tax: | | |
| | $ | 0.00 |
| NYS Real Estate Transfer Tax: | | |
| | $ | 0.00 |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**
Recorded/Filed        08-20-2007 15:58
City Register File No.(CRFN):
.2007000430263

*Janette M. Hill*

*City Register Official Signature*

E- 5849

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
LUIS NUNOZ

---------- [Space Above This Line For Recording Data] ----------

E5849
[Escrow/Closing #]

Block- 1673

Lot- 31

## MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated   JUNE 26, 2007   , together with all
Riders to this document, will be called the "Security Instrument."
(B) "Borrower."
ANTHONY H HALL.

whose address is
652 MACON ST, BROOKLYN, NY 11233
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.
(D) "Lender."
COUNTRYWIDE HOME LOANS, INC.
will be called "Lender." Lender is a
CORPORATION
under the laws of NEW YORK                                   , which exists
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613    . Lender's address is
(E) "Note." The note signed by Borrower and dated  JUNE 26, 2007    , will be called the "Note."
The Note shows that I owe Lender
SIX HUNDRED THOUSAND and 00/100

Dollars (U.S. $ 600,000.00        ) plus interest and other amounts that may be payable. I have
promised to pay this debt in Periodic Payments and to pay the debt in full by  JULY 01, 2037
Section: _____ Block: __1673__ Lot: __31__ Unit: _____

NEW YORK- Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 13
MERS -6A(NY) (0505)       CHL (08/05)(d)     VMP Mortgage Solutions, Inc. (800)521-7291
CONWVA                                                                        Form 3833 1/01



PREMISES
IMPROVED BY A
ONE OR TWO

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS rights in the Property described in (A) through (... ......

(A) The Property which is located at
652 MACON ST

BROOKLYN
11233-1519 [Zip Code]. This Property is in    KINGS    [City, Town or Village], New York    [State]
It has the following legal description:    County.
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment to be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is far an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

**Schedule A Description**

Page   1

Title Number E-5849

ALL that certain plot, piece or parcel of land situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Macon Street distant 382 feet westerly from the southwesterly corner of Ralph Avenue and Macon Street;

RUNNING THENCE southerly and parallel with Ralph Avenue and part of the distance through a party wall 100 feet;

THENCE westerly and parallel with Macon Street 18 feet;

THENCE northerly and parallel with Ralph Avenue and part of the distance through another party wall 100 feet to the southerly side of Macon Street;

THENCE easterly along the southerly side of Macon Street 18 feet to the point or place of BEGINNING.

apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. **Monthly Payments For Taxes And Insurance.**

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount of Escrow Funds I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

-6A(NY) (0405)     CHL (0505)     Page 6 of 13     Form 3033 1/01

amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if those rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of "Miscellaneous Proceeds") proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. Borrower's Loan Application. If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. Lender's Right to Protect Its Rights in The Property. If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay these amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay these amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 19 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address, I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by Federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law required removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(i) The promise or agreement that I failed to keep or the default that has occurred;

(i) The action that I must take to correct that default;

(3) A date by which I must correct the default. That d... will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23.** Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24.** Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25.** Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
ANTHONY M. HILL                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

STATE OF NEW YORK,    *Kings*    COUNTY SS:

On the 26 day of JUNE 2007 before me, the undersigned, a notary public in and for said state, personally appeared ANTHONY W HALL

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

HAROLD J. ROTHSCHILD
Notary Public, State of New York
01RO6160725
Qualified in Kings County
Tax Map Commission Expires December 31, 20__

Notary Public

SEAL

# MONTHLY ADJUSTABLE RATE PAYOPTION RIDER
### (MTA Twelve Month Average Index - Payment Caps)

E5849
[Escrow/Closing #]                    [Loan #]

THIS ADJUSTABLE RATE RIDER is made this TWENTY-SIXTH      day of
JUNE,  2007 . . . . , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
652 MACON ST
BROOKLYN, NY 11233-1518
[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.   INTEREST**
**(A)  Interest Rate**
Interest will be charged on unpaid Principal until the full amount has been paid, I will initially pay
interest at a yearly rate of     8.375  %. This is my initial interest rate and is the rate for determining
the interest I owe until It changes as provided below. Interest will be charged on the basis of a twelve-month
year and a thirty-day month.

● PayOption MTA Rider - No Intro Period
1E827-XX (10/06)(d4)                          Page 1 of 8




The interest rate used to calculate the initial Minimum Payment described in Section 3 is 1.000 %. When I make a Minimum Payment which is based on an interest rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."

**(B)  Interest Rate Change Dates**

The interest rate I owe may change on the first day of the first scheduled monthly payment, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C)  Index**

On each Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 40/100 percentage point(s) 3.400 (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than 9.950 % or lower than the Margin. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.  **PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the **FIRST** day of each month beginning on **August, 2007**. I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **JULY 01, 2037**, I still owe amounts under this Note, I will pay those amounts

in full on that date, which is called the "Maturity Date." I will make my monthly payments at
**P.O. Box 660694, Dallas, TX 75266-0694**

or at a different place if required by the Note Holder.

**(B)   Amount of My Initial Minimum Payment**
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. Each of my Initial Minimum Payments until the first Payment Change Date will be in the amount of US $ **1,929.84** , unless adjusted under Section 3(F). If the Minimum Payment is not sufficient to cover the amount of the interest due, negative amortization will occur.

**(C)   Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the **first** day of AUGUST, **2008** , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The Minimum Payment is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) applies, the amount of my new monthly payment effective on a Payment Change Date will not increase by more than **7.500%** of my prior monthly payment. This limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by multiplying the amount of my Minimum Payment due the month preceding the Payment Change Date by the number **1.075** . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

**(E)   Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the Payment Cap described in Section 3(D), my Minimum Payment could be insufficient to pay the interest portion of the monthly payment that would repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal.

♦ PayOption MTA Rider - No Intro Period
TSB27-XX (10/05)                               Page 3 of 6

Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due, the Note Holder will apply the payment as provided in Section 3(A).

(F)  Limit on My Unpaid Principal; Increased Monthly Payment
My unpaid Principal can never exceed the Maximum Principal Limit equal to
ONE  HUNDRED  TEN                            percent (       110 %)  of the Principal amount I
originally borrowed. On the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than usually and each payment change will not be limited by the Payment Cap. The new Minimum Payment will be in an amount sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the then-current interest rate.

(G)  Required Full Payment
On the tenth                     Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H)  Payment Options
After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") that are greater than the Minimum Payment. The Payment Options are calculated using the new interest rate in accordance with Section 2(D). The following Payment Options may be provided:
    (i)    Interest Only Payment: the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
    (ii)   Amortized Payment: the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.
    (iii)  15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. Because the interest rate may change monthly, the amounts of each of these Payment Options may also change monthly.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As or ... ... occurs 18. "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Monthly Adjustable Rate PayOption Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
ANTHONY W. HALL                                           -Borrower

_____
                                                          -Borrower

_____
                                                          -Borrower

_____
                                                          -Borrower

PayOption MTA Rider – No Intro Period
1E827-XX (10/03)                        Page 6 of 6

## 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:
01673 0031

Prepared By:
LUIS MUNOZ

E5849
[Escrow/Closing #]                    [Doc ID #]

THIS 1-4 FAMILY RIDER is made this TWENTY-SIXTH     day of JUNE, 2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
652 MACON ST
BROOKLYN, NY 11233-1518
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

 -57R (0401).01     CHL (08/04)(d)     Page 1 of 3
VMP Mortgage Solutions, Inc. (800)521-7291

Initials: _____
Form 3170 1/01



**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and

-57R (0401).01 CHL (08/04)        Page 2 of 3        Initials: _____        Form 3170 1/01

DOC ID #: 00021xxxxxx

maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property, before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
ANTHONY W. HALL                    - Borrower

_____ (Seal)
                                   - Borrower

_____ (Seal)
                                   - Borrower

_____ (Seal)
                                   - Borrower

@2Q2 -57R (0401).01 CHL (06/04)        Page 3 of 3              Form 3170 1/01

Block: 1673
Lot: 31

Berkman, Henoch, Peterson & Peddy, P.D.
100 Garden City Plaza
Garden City, NY 11530

## ASSIGNMENT OF MORTGAGE

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. having an address at 7105 Corporate Drive, Plano TX 75024, Assignor

in consideration of ten and no/100 ($10.00) Dollars and other good and valuable consideration paid by:

THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE, FOR CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA11 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11 Assignee, having an address of One Wall Street, New York NY 10286, hereby assigns unto the assignee, a certain mortgage made by ANTHONY W. HALL given to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. to secure payment of the sum of $600,000.00 Dollars and interest, dated 06/26/2007 and recorded on 08/20/2007, in the Office of the Register of the County of KINGS in CRFN: 2007000430263 covering premises 652 MACON STREET, BROOKLYN, NY 11233: SEE EXHIBIT A, ATTACHED, FOR LEGAL DESCRIPTION

Together with the bond or obligation described in said mortgage, and the moneys due to grow due thereon with interest.

TO HAVE AND TO HOLD, the same unto the assignee, and to the successors, legal representatives and assigns of the assignee forever.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Assignment is made to and accepted by the Assignee without warranty or representation on the part of the assignor and without recourse to the assignor in any event whatsoever.

IN WITNESS WHEREOF, the Assignor has duly executed the Assignment on
1/22/2010

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.

BY: _____
Gregory Higgens, Assist Vice President

STATE OF Texas    )
COUNTY OF Tarrant )ss.:
                  )

On the 22 day of January in the year 2010 before me, the undersigned, personally appeared Gregory Higgens, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

SEAL

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2010020501012001001E6E11

## RECORDING AND ENDORSEMENT COVER PAGE

**Document ID:** 2010020501012001      **Document Date:** 01-22-2010      **PAGE 1 OF 4**
**Document Type:** ASSIGNMENT, MORTGAGE      **Preparation Date:** 02-05-2010
**Document Page Count:** 2

| PRESENTER: | RETURN TO: |
|---|---|
| HOLD FOR PICK-UP-SUZANNE MANGO<br>ADVANTAGE FORECLOSURE-FCL-63551<br>410 NEW YORK AVENUE<br>HUNTINGTON, NY 11743<br>631-549-7721<br>mdaly@advantagetitle.com | HOLD FOR PICK-UP-SUZANNE MANGO<br>BERKMAN, HENOCH, PETERSON & PEDDY<br>100 GARDEN CITY PLAZA<br>GARDEN CITY, NY 11530 |

### PROPERTY DATA

**Borough**     **Block Lot**       **Unit**     **Address**
BROOKLYN     1673  31    Entire Lot     652 MACON STREET
**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

**CRFN:** 2007000430263

### PARTIES

| ASSIGNOR/OLD LENDER:<br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br>7105 CORPORATE DRIVE<br>PLANO, TX 75024 | ASSIGNEE/NEW LENDER:<br>THE BANK OF NEW YORK MELLON<br>ONE WALL STREET<br>NEW YORK, NY 10286 |
|---|---|

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 47.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed   02-17-2010 16:05
City Register File No.(CRFN):
2010000055119

*Jannette M. Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2010020501012001001C6C91

RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 4

Document ID: 2010020501012001          Document Date: 01-22-2010          Preparation Date: 02-05-2010
Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**
**ASSIGNOR/OLD LENDER:**
COUNTRYWIDE HOME LOANS, INC.
7105 CORPORATE DRIVE
PLANO, TX 75024

**PARTIES**
**ASSIGNEE/NEW LENDER:**
THE BANK OF NEW YORK
ONE WALL STREET
NEW YORK, NY 10286

**ASSIGNEE/NEW LENDER:**
ALTERNATIVE LOAN TRUST 2007 OA-11
ONE WALL STREET
NEW YORK, NY 10286

**ASSIGNEE/NEW LENDER:**
SERIES 2007-OA11
ONE WALL STREET
NEW YORK, NY 10286

**ASSIGNEE/NEW LENDER:**
CWALT, INC.
ONE WALL STREET
NEW YORK, NY 10286

**ASSIGNEE/NEW LENDER:**
MORTGAGE PASS-THROUGH CERTIFICATES
ONE WALL STREET
NEW YORK, NY 10286

EXHIBIT A

ALL that certain plot, place or parcel of land situate lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Macon Street distant 382 feet westerly from the southwesterly corner of Ralph Avenue and Macon Street;

RUNNING THENCE southerly and parallel with Ralph Avenue and part of the distance through a party wall 100 feet;

THENCE westerly and parallel with Macon Street 18 feet;

THENCE northerly and parallel with Ralph Avenue and part of the distance through another party wall 100 feet to the southerly side of Macon Street;

THENCE easterly along the southerly side of Macon Street 18 feet to the point or place of BEGINNING.

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2012021700144001001ECE5D

### RECORDING AND ENDORSEMENT COVER PAGE          PAGE 1 OF 3

| | | |
|---|---|---|
| Document ID: 2012021700144001 | Document Date: 02-14-2012 | Preparation Date: 02-17-2012 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 1 | | |

**PRESENTER:**
CORELOGIC
450 EAST BOUNDARY STREET
CHAPIN, SC 29036
803-941-1492
mwymer@corelogic.com

**RETURN TO:**
CORELOGIC
450 EAST BOUNDARY STREET
CHAPIN, SC 29036
803-941-1492
mwymer@corelogic.com

### PROPERTY DATA

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| BROOKLYN | 1673 31 | Entire Lot | 652 MACON STREET |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN: 2007000430263

### PARTIES

**ASSIGNOR/OLD LENDER:**
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.
1901 E VOORHEES STREET, SUITE C
DANVILLE, IL 61834
x Additional Parties Listed on Continuation Page

**ASSIGNEE/NEW LENDER:**
THE BANK OF NEW YORK MELLON
101 BARCLAY ST - 4W
NEW YORK, NY 10286

### FEES AND TAXES

| Mortgage | | | |
|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | |
| Taxable Mortgage Amount: | $ | 0.00 | |
| Exemption: | | | |
| TAXES: County (Basic): | $ | 0.00 | |
| City (Additional): | $ | 0.00 | |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 42.00 | |
| Affidavit Fee: | $ | 0.00 | |

Filing Fee:
$ 0.00
NYC Real Property Transfer Tax:
$ 0.00
NYS Real Estate Transfer Tax:
$ 0.00

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed          03-01-2012 10:00
City Register File No.(CRFN):
2012000079972

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2012021700144001001CCCDD

## RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 3

| | | |
|---|---|---|
| Document ID: 2012021700144001 | Document Date: 02-14-2012 | Preparation Date: 02-17-2012 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**PARTIES**
**ASSIGNOR/OLD LENDER:**
COUNTRYWIDE HOME LOANS, INC.
1901 E VOORHEES STREET, SUITE C
DANVILLE, IL  61834

**PARTIES**
**ASSIGNEE/NEW LENDER:**
THE BANK OF NEW YORK
101 BARCLAY ST - 4W
NEW YORK, NY  10286

# EXHIBIT C

Premises:    652 MACON STREET
BROOKLYN, NY 11233

## MEMORANDUM OF SALE

The undersigned has, on January 10, 2019, purchased the premises described in the annexed printed advertisement of sale, for the sum of _One hundred_ 00/100 Dollars ($ _100.00_ ) and hereby promises and agrees to comply with the terms and conditions of the sale of said premises as above mentioned and set forth in the Terms of Sale and the Judgment of Foreclosure and Sale in this action.

Dated: January 10, 2019

Purchaser:   _Plaintiff_

Address:

Telephone:

_Rich Cantwell as Rep_

(Purchaser)

## COMPLETE **ONLY ONE (1)** OF THE FOLLOWING:

1) Received from _____, purchaser,
the sum of _____ Dollars, ($            ),
being ten percent (10%) on the amount bid by the Purchaser for property sold by me under judgment in the above entitled action.

Dated: January 10, 2019

_____
LEO SALZMAN, Esq., Referee

2) Purchase by Plaintiff, their successor or assign, Bid Deposit waived

Dated: January 10, 2019

_____
LEO SALZMAN, Esq. Referee

**COPY 1 FOR REFEREE**
**MUST BE ORIGINAL SIGNATURE**

Premises:    652 MACON STREET
             BROOKLYN, NY 11233

## MEMORANDUM OF SALE

The undersigned has, on January 10, 2019, purchased the premises described in the annexed printed advertisement of sale, for the sum of _One Hundred 00/100_ Dollars ($ _100.00_ ) and hereby promises and agrees to comply with the terms and conditions of the sale of said premises as above mentioned and set forth in the Terms of Sale and the Judgment of Foreclosure and Sale in this action.

Dated: January 10, 2019

Purchaser: _Plaintiff_

Address:

Telephone:

_Rich Cantrell as Rep_
(Purchaser)

## COMPLETE <u>ONLY ONE (1)</u> OF THE FOLLOWING:

1) Received from _____, purchaser, the sum of _____ Dollars, ($                  ), being ten percent (10%) on the amount bid by the Purchaser for property sold by me under judgment in the above entitled action.

Dated: January 10, 2019

_____
LEO SALZMAN, Esq., Referee

2) Purchase by Plaintiff, their successor or assign, Bid Deposit waived

Dated: January 10, 2019

_____
LEO SALZMAN, Esq. Referee

### COPY 2 FOR PURCHASER
### MUST BE ORIGINAL SIGNATURE

2 of 7

NYSCEF DOC. NO. 63

INDEX NO. 515066/2015

RECEIVED NYSCEF: 02/06/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11, | Index No. 515066/2015 **REFEREE'S OATH** |

Plaintiff,

-against-

ANTHONY W. HALL, CRIMINAL COURT OF THE CITY OF NEW YORK, KINGS SUPREME COURT, NANCY T. SUNSHINE COMMISSIONER OF JURORS, CITY OF NEW YORK DEPARTMENT OF TRANSPORTATION PARKING VIOLATIONS BUREAU, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, CITY OF NEW YORK TRANSIT AUTHORITY TRANSIT ADJUDICATION BUREAU THOMASINA BUCHANAN, JERRY FAULK, REGINA MOYER, AMINA BUCHANAN, TODD KRAMER, SAMANTHA FLOOD, PENELOPE BENNETT, VANESSA NIBLETT, LATOYA BURNS,
Defendants.

STATE OF NEW YORK )
COUNTY OF KINGS ) ss.:

LEO SALZMAN, Esq., being duly sworn, deposes and says:

I am the Referee duly appointed herein to make the sale in the above-entitled action, and the officer who made such sale; that the annexed report of sale signed by me is in all respects true and correct, and that said report and the statement annexed thereto contain a true, accurate and complete report of the disposition of the proceeds of sale.

LEO SALZMAN, Esq. Referee

STATE OF NEW YORK )
COUNTY OF KINGS ) ss.:

On the 10 day of January in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared LEO SALZMAN, Esq., Referee, personally known to me or proved to me on the basis satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

RICHARD J. CANTWELL
Notary Public, State of New York
No. 01CA6291356
Qualified in Suffolk County
Commission Expires November 27, 2021

3 of 7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

THE BANK OF NEW YORK MELLON, FKA THE BANK
OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2007-OA11,

Plaintiff,

-against-

ANTHONY W. HALL, CRIMINAL COURT OF THE CITY
OF NEW YORK, KINGS SUPREME COURT, NANCY T.
SUNSHINE COMMISSIONER OF JURORS, CITY OF NEW
YORK DEPARTMENT OF TRANSPORTATION PARKING
VIOLATIONS BUREAU, CITY OF NEW YORK
ENVIRONMENTAL CONTROL BOARD, CITY OF NEW
YORK TRANSIT AUTHORITY TRANSIT ADJUDICATION
BUREAU THOMASINA BUCHANAN, JERRY FAULK,
REGINA MOYER, AMINA BUCHANAN, TODD KRAMER,
SAMANTHA FLOOD, PENELOPE BENNETT, VANESSA
NIBLETT, LATOYA BURNS,

Defendants.

Index No. 515066/2015

**TERMS OF SALE**

Premises:
652 MACON STREET
BROOKLYN, NY 11233

The premises described in the annexed advertisement of sale (the "Premises"), will be sold under the direction of LEO SALZMAN, Esq., Referee, upon the following terms (**note: if any of the following terms conflicts with the Judgment of Foreclosure and Sale, then the Judgment shall control**):

FIRST Ten (10%) percent of the purchase price of said premises based on the struck down bid at the auction (the "Purchase Price") will be required to be paid in cash, bank or certified check payable to the order of LEO SALZMAN, Esq., Referee, or such other form acceptable to the Referee, ("Bid Deposit") at the time and place of sale, and for which the Referee's receipt will be given EXCEPT that Plaintiff or any party designated by Plaintiff as their successor or assign shall not be required to pay any Bid Deposit should the Plaintiff or such successor or assign be the highest bidder at sale.

SECOND The residue of said purchase money will be required to be paid by bank or certified check payable to the order of the Referee or such other form acceptable to the Referee, at the Referee's office at 2116 AVENUE J, BROOKLYN, NY 11210, at 10:00 a.m. on February 11, 2019 when the Referee's deed will be ready for delivery (hereinafter the "Closing Date"). Except as provided for herein, TIME IS OF THE ESSENCE with respect to the Closing Dates as to the Purchaser only.

THIRD The Referee is not required to send any notice to the Purchaser and if Purchaser neglects to call or fails to appear, ready, willing and able to complete the purchase at the time and place above specified to receive the deed, the Purchaser will be in default of its obligations hereunder and will be charged with interest thereafter on the whole amount of the purchase, unless the Referee shall deem it proper to extend the time for the completion of said purchase.

**FOURTH** In the event that the Plaintiff shall in its sole and absolute discretion, agree to extend the Closing Date, it shall not be extended for more than thirty (30) calendar days (hereinafter referred to as the "Extended Date") and such extension shall be granted only on the following terms and conditions: (a) Purchaser shall pay to Plaintiff in cash, bank or certified check interest at the rate of nine percent (9%) per annum on the total Purchase Price during the period of such extension (in no event shall the rate of interest charged hereunder be in excess of the maximum rate provided by applicable law); (b) Purchaser shall pay all costs and expenses incurred by the Plaintiff in connection with the granting of said extension; (c) Purchaser shall assume all responsibility for the common charges, taxes, insurance and other costs of payments of any kind required to be paid by the Referee herein and the risk of loss or damage from any cause whatsoever during the period of such extension; (d) TIME SHALL BE OF THE ESSENCE with respect to the Extended Date as to the Purchaser only.

**FIFTH** All taxes, assessments, water rates and other encumbrances which, as of the time of the public auction, are due and payable, will be paid by the Referee or will be allowed to the Purchaser, provided the Purchaser shall previous to the delivery of the deed, produce to the Referee proof of payment of such liens, and shall be apportioned. In the event that the Plaintiff advanced monies for taxes, assessments, statutory liens, water charges, sewer rents or hazard insurance covering a period which is later in time than the time of the public auction, purchaser agrees to adjust with Plaintiff from the date of the foreclosure sale through the date of closing all such advances.

**SIXTH** The Purchaser of said premises, or any portion thereof, will, at the time and place of sale, sign a memorandum of his purchase, and an agreement to comply with the terms and conditions of sale herein contained.

**SEVENTH** The biddings will be kept open after the property is struck down and in case any purchaser shall fail to comply with any of the conditions of sale set forth herein, the premises so struck down to purchaser will be again put up for sale under the direction of the Referee under these same terms of sale, without application to the Court, unless the Plaintiff's attorney(s) shall elect to make such application; and such purchaser will be held liable for any deficiency there may be between the sum for which said premises shall be struck down upon the sale, and that for which they may be purchased on the resale, and also for any costs or expenses occurring on such resale, including but not limited to Plaintiff's reasonable attorney's fees, disbursements and advertising costs.

**EIGHTH** In the event the Purchaser failed for any reason to comply in any way with these Terms of Sale, then the Purchaser shall have no further rights to any monies (including without limitation the Initial Payment and any payment made in connection with an extension) deposited with the Referee (the "Partial Payment"), and the Referee is directed to tender the Partial Payment to Plaintiff within ten (10) days of the date of Purchaser's default, which sum shall reduce the amount which Defendant Mortgagor owes to the Plaintiff, including but not limited to any and all additional expenses arising out of Purchaser's failure to comply with these Terms of Sale.

**NINTH** In event that the Plaintiff or any successor at law or assignee of the Plaintiff shall be the purchaser, or in the event that the rights of the purchaser shall be assigned to and be acquired by the Plaintiff, and the valid assignment thereof filed with the Referee, the provisions of the judgment of foreclosure and sale entered herein insofar as the same relate to such purchase by or assignment to

Plaintiff shall be deemed included in these terms of sale with the same force and effect as if fully set forth at length.

TENTH Notwithstanding any provision contained herein to the contrary, in the event the Plaintiff is unable to deliver marketable title for whatever reason whatsoever, except for the default of the Purchaser, the Purchaser's sole remedy shall be a return of the Initial Payment or Partial Payment. In that event, the Purchaser shall have no further rights against the Referee or the Plaintiff.

ELEVENTH The Purchaser will execute any and all documents required by the Referee in connection with this transfer, including, without limitation, Real Property Transfer Tax forms, New York State Transfer Gains Tax forms, New York State Equalization forms and indemnity agreements.

TWELFTH All deed stamps, transfer taxes, recording or registration fees, if any, shall be paid by the Purchaser.

THIRTEENTH The Premises are sold "AS IS" as of the date of the later to occur of the Closing Date or the Extended Date. Neither the Referee nor the Plaintiff has authority to or will permit access to the Premises for any purpose whatsoever prior to delivery of the deed nor shall Referee or Plaintiff be obligated to deliver any keys to Purchaser.

FOURTEENTH The property will be sold subject to:

  (a) The state of facts an accurate survey will show;

  (b) All covenants, restrictions, easements, declarations, rights of way, agreements and reservations, if any, of record and to any and all violations thereof;

  (c) Any and all building and zoning regulations, restrictions, ordinances and amendments thereto of the municipality, the State, the Federal Government, or any agency, bureau, commission or department in which said premises are situated, and to any violations or notices of violations of the same, including, but not limited to reapportionment of lot lines, and vault charges, if any:

  (d) Any and all orders or requirements issued by any governmental body having jurisdiction against or affecting said premises and violations of the same;

  (e) Rights of tenants or persons in possession, if any;

  (f) Prior mortgages and judgments, if any, now liens of record;

  (g) The right of redemption of the United States of America to redeem the property within 120 days from date of sale, if any;

  (h) Rights of any Defendants pursuant to CPLR Section 317, CPLR Section 2004 and CPLR Section 5015, if any; and

FIFTEENTH The Referee and/or the Plaintiff have not made and do not make any representations as to the physical condition, rents, leases, expenses, operation or any other matter or thing affecting

NYSCEF DOC. NO. 63                                                           RECEIVED NYSCEF: 02/06/2019

or relating to the premises, except as herein specifically set forth, and the Purchaser hereby expressly acknowledges that no representations have been made.

SIXTEENTH Neither the Referee nor the Plaintiff herein is in legal title, actual nor constructive possession of the property. Risk of any loss from hazard, condemnation or any other cause shall pass to the Bidder with execution hereof an abatement of the purchase price. If all or any part thereof is destroyed without fault of the vendor or is taken by eminent domain, the purchaser is not thereby relieved from a duty to pay the price, nor is he thereby entitled to recover any portion thereof that he has paid.

SEVENTEENTH Unless expressly stated in the Judgment, the loan being foreclosed herein is not a "High-Cost Home Loan" as such term is defined by Banking Law §§595-a and/or 6-1 and Plaintiff was not obligated to plead or prove compliance with Banking Law §§595-a and/or 6-1 pursuant to RPAPL §1302.

EIGHTEENTH The Referee and/or the Plaintiff shall not be liable or bound by any verbal or written statements, representations, promises, statements or guaranties, real estate broker's "set-ups" or information pertaining to the premises furnished by any real estate broker, agent, employee or any other person except as specifically set forth herein. The Referee and/or the Plaintiff IS NOT LIABLE FOR ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTIES, PROMISES OR STATEMENTS OF ANY KIND RELATING IN ANY MANNER TO THE PREMISES. All understandings and agreements heretofore had between the parties are merged in these Terms of Sale, which fully and completely express their agreement. These Terms of Sale cannot be changed or terminated orally and cannot be waived orally. These terms of sale shall be binding on the Purchaser(s) and any heirs, successors and assigns thereof.

NINETEENTH Any errors or omissions in computing apportionments and/or allocation of closing costs at closing shall be corrected and the Purchaser agrees to execute any documents and/or reimburse any additional funds forthwith upon presentment. This provision shall survive the CLOSING and delivery of the Referee's Deed.

TWENTIETH: Notwithstanding anything to the contrary herein, neither plaintiff nor its successors and/or assigns shall be responsible and/or liable for any unpaid common charges.

Dated: January 10, 2019

_____
LEO SALZMAN, Esq., Referee

At an IAS Part FRP1 of the Supreme Court of the State of New York held in and for the County of Kings at the Courthouse located thereof at 360 Adams Street, Brooklyn, New York 11201 on this 26 day of October, 2018.

PRESENT:

HON. HON NOACH DEAR
                    Justice

------------------------------------------------------------X

THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11,

                                        Plaintiff,

-against-

ANTHONY W. HALL, CRIMINAL COURT OF THE CITY OF NEW YORK, KINGS SUPREME COURT, NANCY T. SUNSHINE COMMISSIONER OF JURORS, CITY OF NEW YORK DEPARTMENT OF TRANSPORTATION PARKING VIOLATIONS BUREAU, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, CITY OF NEW YORK TRANSIT AUTHORITY TRANSIT ADJUDICATION BUREAU THOMASINA BUCHANAN, JERRY FAULK, REGINA MOYER, AMINA BUCHANAN, TODD KRAMER, SAMANTHA FLOOD, PENELOPE BENNETT, VANESSA NIBLETT, LATOYA BURNS,

                                        Defendants.

------------------------------------------------------------X

MS#2

Index No. 515066/2015

**ORDER CONFIRMING REFEREE'S REPORT AND JUDGMENT OF FORECLOSURE AND SALE**

**MORTGAGED PROPERTY:**
**652 MACON STREET**
**BROOKLYN, NY 11233**
Block 1673 Lot 31

UPON the Summons, Complaint, and Notice of Pendency filed in this action on the December 11, 2015, the Notice of Motion dated March 29, 2018 , the Affirmation

of Stuart L. Druckman, Esq. the affidavit of merit and amount due by Mhari Holtzclaw, who is a Litigation Foreclosure Specialist of New Penn Financial, LLC D/B/A Shellpoint Mortgage Servicing ("Shellpoint") the authorized servicing agent for THE BANK OF NEW YORK MELLON, F/K/A BANK OF NEW YORK, AS TRUSTEE, FOR THE BANK OF NEW YORK MELLON, F/K/A BANK OF NEW YORK, AS TRUSTEE, FOR THE CERTIFICATEHOLDERS OF CWALT, INC. AN ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11,duly sworn on March 1, 2018, together with the exhibits annexed hereto, all in support of Plaintiffs motion for a Judgment of Foreclosure and Sale; and

UPON proof that each of the defendants herein has been duly served with the Summons and Complaint in this action, and ANTHONY W. HALL has voluntarily appeared personally; and it appearing that more than the legally required number of days has elapsed since defendant(s) CRIMINAL COURT OF THE CITY OF NEW YORK, KINGS SUPREME COURT, NANCY T. SUNSHINE COMMISSIONER OF JURORS, CITY OF NEW YORK DEPARTMENT OF TRANSPORTATION PARKING VIOLATIONS BUREAU, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, CITY OF NEW YORK TRANSIT AUTHORITY TRANSIT ADJUDICATION BUREAU THOMASINA BUCHANAN, JERRY FAULK, REGINA MOYER, AMINA BUCHANAN, TODD KRAMER, SAMANTHA FLOOD, PENELOPE BENNETT, VANESSA NIBLETT, LATOYA BURNS, were so served and; and Plaintiff having established to the court's satisfaction that a judgment against defendants is warranted; and

UPON the affidavit of mailing reflecting compliance with CPLR 3215(g)(3)(iii); and

UPON proof that non-appearing defendant(s) CRIMINAL COURT OF THE CITY OF NEW YORK, KINGS SUPREME COURT, NANCY T. SUNSHINE COMMISSIONER OF JURORS, CITY OF NEW YORK DEPARTMENT OF TRANSPORTATION PARKING VIOLATIONS BUREAU, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, CITY OF NEW YORK TRANSIT AUTHORITY TRANSIT ADJUDICATION BUREAU THOMASINA BUCHANAN, JERRY FAULK, REGINA MOYER, AMINA BUCHANAN, TODD KRAMER, SAMANTHA FLOOD, PENELOPE BENNETT, VANESSA NIBLETT, LATOYA BURNS, ,are not absent, in accordance with RPAPL §1321(2); and

A Referee having been appointed to compute the amount due to Plaintiff upon the bond/note and mortgage set forth in the Complaint and to examine whether the mortgaged property can be sold in parcels; and

UPON reading and filing the Report of LEO SALZMAN, Esq. dated March 13, 2018, showing the sum of $895,692.11 due as of February 24, 2018 and that the mortgaged property may not be sold in parcels; and

UPON proof of due notice of this motion upon all parties entitled to receive same, and upon all the prior proceedings and papers filed herein;

NOW, on motion by Druckman Law Group PLLC, attorneys for the Plaintiff, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the motion is granted; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Referee's Report be, and the same is, hereby in all respects ratified and confirmed; and it is further

**ORDERED, ADJUDGED AND DECREED**, that the mortgaged property described in the Complaint and as hereafter described, or such part thereof as may be sufficient to discharge the mortgage debt, the expenses of the sale, and the costs of this action as provided by the RPAPL be sold, within 90 days of the date of this Judgment, in one parcel, at a public auction at the <u>Room 224 of the Kings County Supreme Court</u> by and under the direction of LEO SALZMAN, Esq. with an address of 2116 AVENUE J, BROOKLYN, NY 11210 and telephone number 718-338-3183 who is hereby appointed Referee for that purpose; that said Referee give public notice of the time and place of sale in accordance with RPAPL §231 in; <u>The Brooklyn Graphic</u> and it is further

**ORDERED, ADJUDGED AND DECREED** that by accepting this appointment, the Referee certifies that he is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to §36.2 (c) ("Disqualifications from appointment") and §36.2 (d) ("Limitations on appointments based upon compensation"); and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall immediately notify the Appointing Judge; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Referee is prohibited from accepting or retaining any funds for him/herself or paying funds to him/herself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Referee shall conduct the foreclosure sale only if Plaintiff, its successors and/or assignees, or its representative is

present at the sale or the Referee has received a written bid and Terms of Sale from Plaintiff, its successors and/or assigns, or its representative; and it is further

ORDERED, ADJUDGED AND DECREED that if the Referee does not conduct the sale within 90 days of the date of the judgment, in accordance with CPLR 2004, the time fixed by RPAPL §1351(1) is extended for the Referee to conduct the sale as soon as reasonably practicable; and it is further

ORDERED, ADJUDGED AND DECREED that at the time of sale the Referee shall accept a written bid from the Plaintiff or the Plaintiffs attorney, just as though Plaintiff were physically present to submit said bid; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee shall accept the highest bid offered by a bidder who shall be identified upon the court record, and shall require that the successful bidder immediately execute the Terms of Sale for the purchase of the property, and pay to the Referee in cash or certified or bank check, ten percent (10%) of the sum bid, unless the successful bidder is Plaintiff in which case no deposit against the purchase price shall be required; and it is further

ORDERED, ADJUDGED AND DECREED that, in the event the first successful bidder fails to execute the Terms of Sale immediately following the bidding upon the subject property or fails to immediately pay the ten percent (10%) deposit as required, the property shall immediately and on the same day be reoffered at auction; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee shall then deposit the down payment and proceeds of sale, as necessary, in _a bank of his choosing_ in his/her own name as Referee, in accordance with CPLR 2609; and it is further

ORDERED, ADJUDGED AND DECREED that after the property is sold, the Referee shall execute a deed to the purchaser, in accordance with RPAPL §1353 and the terms of sale, which shall be deemed a binding contract; and it is further

ORDERED, ADJUDGED AND DECREED that, in the event a party other than the Plaintiff becomes the purchaser at the sale, the closing of title shall be held no later than 30 days after the date of such sale unless otherwise stipulated by all parties to the sale; and it is further

ORDERED, ADJUDGED AND DECREED that, if Plaintiff (or its affiliate, as defined in paragraph (a) of subdivision 1 of section six-1 of the Banking Law) is the purchaser, such party shall place the property back on the market for sale or other occupancy: (a) within 180 days of the execution of the deed of sale, or (b) within 90 days of completion of construction, renovation, or rehabilitation of the property, provided that such construction, renovation, or rehabilitation proceeded diligently to completion, whichever comes first, provided however, that a court of competent jurisdiction may grant an extension for good cause; and it is further

ORDERED, ADJUDGED AND DECREED that the Referee, on receiving the proceeds of such sale, shall forthwith pay therefrom, in accordance with their priority according to law, all taxes, assessments, sewer rents, or water rates, which are, or may become, liens on the property at the time of sale, with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further

ORDERED, ADJUDGED AND DECREED, that the Referee then deposit the balance of said proceeds of sale in her/his own name as Referee in  a  bank of his choosing

FILED: KINGS COUNTY CLERK 02/27/2019 Case 1:19-cv-07292-ENV-CLP Document 18 Filed 02/27/19 Page 104 of 143 PageID #: 104 INDEX NO. 515066/2015

NYSCEF DOC. NO. 78                                                          RECEIVED NYSCEF: 11/08/2018

and shall thereafter make the following payments in accordance with RPAPL §1354, as follows:

**FIRST:** The Referee's statutory fees for conducting the sale, in accordance with CPLR 8003(b), not to exceed $500.00 unless the property sells for $50,000.00 or more or *in the event a sale was cancelled or postponed,* Plaintiff shall compensate the Referee in the sum of $ 350 for each adjournment or cancellation, unless the Referee caused the delay;

**SECOND:** All taxes, assessments, and water rates that are liens upon the property and monies necessary to redeem the property from any sales for unpaid taxes, assessments, or water rates that have not become absolute, and any other amounts due in accordance with RPAPL §1354(2). Purchaser shall be responsible for interest and penalties due on any real property taxes accruing after the sale. The Referee shall not be responsible for the payment of penalties or fees pursuant to this appointment. The Purchaser shall hold the Referee harmless from any such penalties or fees assessed;

**THIRD:** The expenses of the sale and the advertising expenses as shown on the bills presented and certified by said Referee to be correct, duplicate copies of which shall be annexed to the report of sale;

**FOURTH:** The Referee shall then pay to the Plaintiff or its attorney the following: Amount Due per Referee's Report: $895,692.11 with interest at the note rate from February 24, 2018 until the date of the entry of this judgment., together with any advances as provided for in the note and mortgage which Plaintiff has made for taxes, insurance, principal, and interest, and any other charges due to prior mortgages or to maintain the property pending consummation of this foreclosure sale, not previously included in the computation, upon

presentation of receipts for said expenditures to the Referee, all together with interest thereon pursuant to the note and mortgage, and then with interest from the date of entry of this judgment at the statutory rate until the date the deed is transferred.

Costs and Disbursements: $ 855   adjudged to the Plaintiff for costs and disbursements in this action, with interest at the statutory judgment rate from the date of entry of this judgment;

Additional Allowance: $ 0   is hereby awarded to Plaintiff in addition to costs, with interest at the statutory judgment rate from the date of entry of this judgment, pursuant to CPLR Article 83;

Attorney Fees: $ 0   is hereby awarded to Plaintiff as reasonable legal fees herein, with interest at the statutory rate from the date of entry of this judgment;

FIFTH: Surplus monies arising from the sale shall be paid into court by the officer conducting the sale within five days after receipt in accordance with RPAPL §1354(4) and in accordance with local County rules regarding Surplus Monies; and it is further

ORDERED, ADJUDGED AND DECREED that if the Plaintiff is the purchaser of the property, or in the event that the rights of the purchasers at such sale and the terms of sale under this judgment shall be assigned to and be acquired by the Plaintiff, and a valid assignment thereof is filed with said Referee, said Referee shall not require Plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the Plaintiff or its assignee, a deed or deeds of the property sold upon the payment to said Referee of the amounts specified in items marked "First", "Second", and "Third" above; that the Referee shall allow the Plaintiff to pay the amounts specified in "Second" and "Third" above when

it is recording the deed; that the balance of the bid, after deducting the amounts paid by the Plaintiff, shall be applied to the amount due Plaintiff as specified in paragraph "Fourth" above; that Plaintiff shall pay any surplus after applying the balance of the bid to the Referee, who shall deposit it in accordance with paragraph "Fifth" above; and it is further

ORDERED, ADJUDGED AND DECREED that all expenses of recording the Referee's deed, including real property transfer tax, which is not a lien upon the property at the time of sale, shall be paid by the purchaser, not by the Referee from sale proceeds, and that any transfer tax shall be paid in accordance with Tax Law §1404; and it is further

ORDERED, ADJUDGED AND DECREED that if the sale proceeds distributed in accordance with paragraphs "First," "Second, "Third", and "Fourth" above are insufficient to pay Plaintiff the Amount Due per the Referee's Report as set forth in paragraph "Fourth" above, Plaintiff may seek to recover a deficiency judgment against ANTHONY W. HALL in accordance with RPAPL §1371 if permitted by law; and it is further

ORDERED, ADJUDGED AND DECREED that the mortgaged property is to be sold in one parcel in "as is" physical order and condition, on the day of the sale subject to any condition that an inspection of the property would disclose; any facts that an accurate survey of the property would show; any covenants, restrictions, declarations, reservations, easements, right of way, and public utility agreements of record, if any; any building and zoning ordinances of the municipality in which the mortgaged property is located and possible violations of same; any rights of tenants or persons in possession of the subject property; prior liens of record, if any, except those liens addressed in RPAPL §1354; any equity of redemption of the United States of America to redeem the property within 120 days from the date of sale; and any rights pursuant to CPLR 317, 2003, and 5015, or any appeal of the underlying action or

additional litigation brought by any defendant or its successor or assignee contesting the validity of this foreclosure; and it is further

**ORDERED, ADJUDGED AND DECREED** that the purchaser be let into possession of the property upon production in hand of the Referee's Deed or upon personal service of the Referee's deed in accordance with CPLR 308; and it is further

**ORDERED, ADJUDGED AND DECREED** that within 30 days after completing the sale and executing the proper conveyance to the purchaser, unless the time is extended by the court, the officer making the sale shall file with the clerk a report under oath of the disposition of the proceeds of the sale in accordance with RPAPL §1355(1) and follow all local County rules regarding handling of Surplus Monies; and it is further

**ORDERED, ADJUDGED AND DECREED** that if the purchaser or purchasers at said sale default(s) upon the bid and/or the terms of sale the Referee may place the property for resale without prior application to the Court unless Plaintiffs' attorneys shall elect to make such application; and it is further

**ORDERED, ADJUDGED AND DECREED** that Plaintiff shall serve a copy of this Judgment with Notice of Entry upon the owner of the equity of redemption, any tenants named in this action, and any other parties or persons entitled to service, including the Referee appointed herein; and it is further

**ORDERED, ADJUDGED AND DECREED** that nothing herein shall be deemed to relieve Plaintiff of any obligation imposed by RPAPL §1307 and RPAPL §1308 to secure and maintain the property until such time as ownership of the property has been transferred and the deed duly recorded; and it is further

NYSCEF DOC. NO. 78     Case 1:19-cv-07322-ENV-CLP     Document 1     Filed 02/27/19     Page 108 of 143 PageID     INDEX NO. 515066/2015
#: 108

RECEIVED NYSCEF: 11/08/2018

**ORDERED, ADJUDGED AND DECREED** that, when the Referee files a report of sale, he or she shall concurrently file a Foreclosure Actions Surplus Monies Form; and it is further

**ORDERED, ADJUDGED AND DECREED** that to ensure compliance herewith, Plaintiff shall file a written report with the court within six months from the date of entry of this judgment stating whether the sale has occurred and the outcome thereof.

Said property is commonly known as 652 MACON STREET, BROOKLYN, NY 11233

The legal description of the mortgaged property referred to herein is annexed hereto as Schedule A

*Terms of Sale attached*

ORDERED, that the Plaintiff shall serve a copy of the Notice of Sale upon the **Owner of Equity of Redemption** at both his/her last known address and the property address (affidavit of such service shall be presented to the Foreclosure Clerk on or before the auction sale) and upon the Foreclosure Department at least ten (10) days prior to the scheduled sale

ENTER.

HON NOACH DEAR     JSC

Nancy T. Sunshine

NANCY T. SUNSHINE
Clerk

2018 NOV -8 AM 9: 43
FILED
KINGS COUNTY CLERK

11 of 17

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------X

THE BANK OF NEW YORK MELLON, FKA THE
BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-OA11,
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-OA11,

                                        Plaintiff,

                    -against-


ANTHONY W. HALL, CRIMINAL COURT OF THE
CITY OF NEW YORK, KINGS SUPREME COURT,
NANCY T. SUNSHINE COMMISSIONER OF
JURORS, CITY OF NEW YORK DEPARTMENT OF
TRANSPORTATION PARKING VIOLATIONS
BUREAU, CITY OF NEW YORK
ENVIRONMENTAL CONTROL BOARD, CITY OF
NEW YORK TRANSIT AUTHORITY
ADJUDICATION BUREAU THOMASINA
BUCHANAN, JERRY FAULK, REGINA MOYER,
AMINA BUCHANAN, TODD KRAMER,
SAMANTHA FLOOD, PENELOPE BENNETT,
VANESSA NIBLETT, LATOYA BURNS,
                                        Defendants.

-------------------------------------------------------------X

Index No. 515066/2015

COSTS TO PLAINTIFF

MORTGAGED PROPERTY:
652 MACON STREET,
BROOKLYN, NY 11233

COUNTY: KINGS

Block 1673 Lot 31

Costs at $ 855.
This 8th day of Nov  20 18
Nancy T. Sunshine
Clerk of Court Kings County

NANCY T. SUNSHINE
Clerk

KINGS COUNTY CLERK
FILED
2018 NOV -8 AM 9: 44

## COSTS

| | |
|---|---|
| Costs before Note of Issue- CPLR 8201(1) | $200.00 |
| Allowance by statute- CPLR 8302(a)(b) | $_____ |
|     First $200.00 at 10% ............... $20.00 | |
|     Next $800.00 at 5% ................. $40.00 | |
|     Next $2000.00 at 2% ............... $40.00 | |
|     Next $5000.00 at 1% ............... $50.00 | |
| Additional allowance - CPLR 8302(d) | $150.00 |
| Discretionary costs on motion- CPLR 8303(a)(1) | $50.00 |
| | $_____  400. |

## FEES AND DISBURSEMENTS

| | | |
|---|---|---|
| Fee for index number | CPLR 8018(a) | $0.00 |

| | | |
|---|---|---|
| Referee's fee to compute, per order of the court | CPLR 3003(a) | $250.00 50. |
| Paid For Searches | CPLR 8301(a)(10) | $0.00 300. |
| Serving copy of Summons and Complaint | CPLR 8301(d) | $0.00 |
| Reproduction costs — POSTAGE | CPLR 8301(a)(6) | $0.00 15. |
| Fees for publication of Summons | CPLR 8301(a)(3) | $0.00 |
| Certified copies of papers | CPLR 8301(a)(4) | $0.00 |
| Request for judicial intervention | CPLR 8020(a) | $0.00 |
| Clerk's fee for filing of Notice of Pendency | CPLR 8021(a)(10) | $0.00 |
| Skip trace fees | CPLR 8301(d) | $0.00 |
| Motion fees | CPLR 8020(a) | $45.00 90. |
| Note of Issue | CPLR 8020(a) | $0.00 455. |
| TOTAL................................................. | | $695.00 |

total $855.

(FILED: KINGS COUNTY CLERK 11/08/2018 09:49 AM) INDEX NO. 515066/2015

NYSCEF DOC. NO. 78    Case 1:19-cv-07322-ENV-CLP    Document 1    Filed 02/27/19    Page 111 of 143 PageID    RECEIVED NYSCEF: 11/08/2018
#: 111

## ATTORNEY'S AFFIRMATION

STATE OF NEW YORK)
               )ss:
COUNTY OF NASSAU)

The Undersigned, Stuart L. Druckman, Esq., pursuant to CPLR 2106 and under penalties of perjury affirms as follows:

That he is the attorney of record for the Plaintiff in the above-captioned action, that the foregoing disbursements have been incurred in this action and are reasonable in amount, and that the copies of documents or papers charged for herein were actually and necessarily obtained.

Dated: Westbury, New York
       March 29, 2018

_____
Stuart L. Druckman, Esq.
**DRUCKMAN LAW GROUP PLLC**
Attorneys for Plaintiff
THE BANK OF NEW YORK MELLON, FKA
THE BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE
LOAN TRUST 2007-OA11, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2007-OA11
242 Drexel Avenue
Westbury, New York 11590
(516) 876-0800

Case 1:19-cv-07322-ENV-CLP   Document 1   Filed 12/27/19   Page 112 of 143 PageID

**DRUCKMAN LAW GROUP PLLC**
OPERATING ACCOUNT
242 DREXEL AVENUE
WESTBURY, NY 11590

citibank
CITIBANK, N.A.
1-8/210

3/8/2018

PAY TO THE
ORDER OF____Leo Salzman, Esq_____        $ **250.00

___Two Hundred Fifty and 00/100*********************************************************************** DOLLARS

Leo Salzman, Esq
2116 Avenue J
Brooklyn, New York 11210,

MEMO
37367/Hall                                          AUTHORIZED SIGNATURE

⑈000 1 3 2 7⑈  ⑆0 2 1 0 0 0 0 8 9⑆  4 9 8 9 3 6 4 8 3 ⑆

**DRUCKMAN LAW GROUP PLLC   OPERATING ACCOUNT**

| | | | 1327. |
|---|---|---|---|
| Leo Salzman, Esq | | 3/8/2018 | |
| Referee Comp. | Referee Fee - Computation | | 250.00 |

DLG Operating 10/1/1   37367/Hall                                         250.00

**DRUCKMAN LAW GROUP PLLC   OPERATING ACCOUNT**

| | | | 1327. |
|---|---|---|---|
| Leo Salzman, Esq | | 3/8/2018 | |
| Referee Comp. | Referee Fee - Computation | | 250.00 |

DLG Operating 10/1/1   37367/Hall                                         250.00

MODUCT DL3103    USE WITH 97003 ENVELOPE    Deluxe Corporation 1-000-325-0304 or www.dcluxe.com/shop                     4204593001

Case 1:19-cv-07522-ENV-CLP    Document 1    Filed 02/21/19    Page 113 of 143 PageID #: 113



# NYSCEF - Kings County Supreme Court
# Payment Receipt

This is an automated response for Supreme Court / Court of Claims cases. The NYSCEF site has received your electronically filed document(s) for:

**THE BANK OF NEW YORK MELLON F/K/A BANK OF NEW YORK, AS TRUSTEE, FOR THE CERTIFICATION OF CWALT, INC. AN ALTERNATIVE LOAN TRUST 2007OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11 - v. - ANTHONY W HALL et al**

**515066/2015**

## Documents Received on 09/15/2017 03:56 PM

| Doc # | Document Type | Control # | Motion # | Fee |
|-------|---------------|-----------|----------|-----|
| 41 | NOTICE OF MOTION | | | $45.00 |
| | Does not contain an SSN or CPI as defined in 202.5(e) or 206.5(e) | | | |
| | | | **Total Fee** | **$45.00** |

## Payment Information

| | |
|---|---|
| Payment Type: | VISA/MC |
| Date Paid: | 09/15/2017 |
| Fee Amount: | $45.00 |
| Authorization Code: | 083111 |
| Comments: | |

## Filing User

| | | | |
|---|---|---|---|
| Name: | STUART L DRUCKMAN | | |
| Phone #: | 516-876-0800 | E-mail Address: | mmarsh@dlgnylaw.com |
| Fax #: | | Work Address: | 242 Drexel Avenue Westbury, NY 11590 |

Hon. Nancy T. Sunshine, Kings County Clerk and Clerk of the Supreme Court - kcco-efile@nycourts.gov
Phone: Phone: 347-404-9766 or 347-404-9762    Website: https://www.nycourts.gov/courts/2jd/kingsclerk/index.shtml

NYSCEF Resource Center - EFile@nycourts.gov
Phone: (646) 386-3033    Fax: (212) 401-9146    Website: www.nycourts.gov/efile

Case 1:19-cv-07322-ENV-CLP   Document 1   Filed 02/27/19   Page 114 of 143 PageID #: 114

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

THE BANK OF NEW YORK MELLON, FKA THE BANK
OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2007-OA11,

Plaintiff,

-against-

ANTHONY W. HALL, CRIMINAL COURT OF THE CITY
OF NEW YORK, KINGS SUPREME COURT, NANCY T.
SUNSHINE COMMISSIONER OF JURORS, CITY OF NEW
YORK DEPARTMENT OF TRANSPORTATION PARKING
VIOLATIONS BUREAU, CITY OF NEW YORK
ENVIRONMENTAL CONTROL BOARD, CITY OF NEW
YORK TRANSIT AUTHORITY TRANSIT ADJUDICATION
BUREAU THOMASINA BUCHANAN, JERRY FAULK,
REGINA MOYER, AMINA BUCHANAN, TODD KRAMER,
SAMANTHA FLOOD, PENELOPE BENNETT, VANESSA
NIBLETT, LATOYA BURNS,

Defendants.

Index No. 515066/2015

**REFEREE'S REPORT
OF SALE**

STATE OF NEW YORK     )
COUNTY OF KINGS      ) ss.:

    I, LEO SALZMAN, Esq., the Referee duly appointed by the Judgment of Foreclosure

and Sale, entered in this action on November 8, 2018, to make the sale of the mortgaged lands

and premises therein particularly described, do respectfully report as follows:

    1. That I caused due notice of sale of the said lands and premises on January 10, 2019 at

2:30 PM at the Kings County Supreme Court, 360 Adams Street, Room 224, Brooklyn, NY

11201, to be given and published according to law and the rule and practice of this Court, as

appears by the annexed affidavits of publication.

    2. That at the time and place for which the said sale was noticed as aforesaid, I attended

in person and, pursuant to said notice, offered said mortgaged lands and premises for sale to the

highest bidder and duly sold the same to THE BANK OF NEW YORK MELLON, FKA THE

BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT,

INC., ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH

CERTIFICATES, SERIES 2007-OA11, for the sum of $100.00, that being the highest sum bid therefore, and Plaintiff's counsel thereupon waived the ten percent (10%) deposit.

3. That I have allowed to the Plaintiff, as per its Judgment of Foreclosure and Sale, the sum of $895,692.11 with interest thereon from February 24, 2018 to November 8, 2018 at 5.875% per annum in the sum of $37,051.59, and with interest thereon from November 9, 2018 to January 10, 2019 at 9% per annum in the sum of $13,913.90.

4. That the Plaintiff has made the following payments pursuant to the Judgment of Foreclosure and Sale, and I have allowed said sums to the Plaintiff:

- Taxed costs and disbursements     $855.00
- Publication of Notice of Sale     $802.27

5. That my fee herein in the amount of $500.00 has been paid.

6. That I have made, executed and delivered to THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11 a good and sufficient deed of conveyance for the said mortgaged premises so sold, pursuant to the Terms of Sale and the Judgment referred to above.

7. That after such sale herein and the disposal of the proceeds thereof as above provided, there is a deficiency in the amount of $948,714.87.

8. That annexed hereto and made a part hereof is a statement showing the several items aforesaid, and the mode of computation and distribution of the sale proceeds herein.

All of which is respectfully submitted,

Dated:

This 10 day of January, 2019

LEO SALZMAN, Esq., Referee

# STATEMENT

| | |
|---|---|
| Amount due per Referee's Computation and Judgment | $895,692.11 |
| Interest from February 24, 2018 to November 8, 2018 at 5.875% per annum per terms of Note | $ 37,051.59 |
| Interest from November 9, 2018 to January 10, 2019 at 9.000% per annum per Judgment | $ 13,913.90 |
| Taxed costs and disbursement, per Judgment | $ 855.00 |
| Publication of Notice of Sale | $ 802.27 |
| Referee's Fee, per Judgment | $ 500.00 |

|  |  |
|---|---|
| TOTAL DUE | $948,814.87 |
| PURCHASE PRICE | $100.00 |
| DEFICIENCY | $948,714.87 |

Dated:

This _10_ day of _January_, 2019

_____
LEO SALZMAN, Esq., Referee

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
---------------------------------------------X
THE BANK OF NEW YORK MELLON, FKA THE BANK OF
NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2007-OA11,

                                    Plaintiff,                          Index No. 515066/2015

            -against-

                                                                       **AFFIDAVIT OF MAILING**

ANTHONY W. HALL, CRIMINAL COURT OF THE CITY
OF NEW YORK, KINGS SUPREME COURT, NANCY T.
SUNSHINE COMMISSIONER OF JURORS, CITY OF NEW
YORK DEPARTMENT OF TRANSPORTATION PARKING
VIOLATIONS    BUREAU,    CITY    OF    NEW    YORK
ENVIRONMENTAL CONTROL BOARD, CITY OF NEW
YORK TRANSIT AUTHORITY TRANSIT ADJUDICATION
BUREAU THOMASINA BUCHANAN, JERRY FAULK,
REGINA MOYER, AMINA BUCHANAN, TODD KRAMER,
SAMANTHA FLOOD, PENELOPE BENNETT, VANESSA
NIBLETT, LATOYA BURNS,

                                    Defendants.
---------------------------------------------X
STATE OF NEW YORK )
COUNTY OF NASSAU  ) ss.:

        Michael Kassiotis, being duly sworn, deposes and says:

        I am not a party to the action, am over 18 years of age, and employed by the attorneys for the
plaintiff herein.

        On November 13, 2018, I served a copy of the Notice of Sale by depositing a true copy
thereof enclosed in a post-paid properly addressed wrapper, in an official post office depository under
the exclusive care and custody of the United States Postal Service within New York State, addressed
to each of the following persons at the last known address set forth after each name.

TO:
ANTHONY W. HALL
497 Maple Street
Brooklyn, New York 11225

THOMASINA BUCHANAN
652 Macon Street, Apt 1
Brooklyn, NY 11233

JERRY FAULK
652 Macon Street, Apt 1
Brooklyn, NY 11233

Case 1:19-cv-07321-ENV-CLP     Document 1     Filed 02/12/19     Page 118 of 143 PageID
#: 118

REGINA MOYER
652 Macon Street, Apt 1
Brooklyn, NY 11233

AMINA BUCHANAN
652 Macon Street, Apt 2
Brooklyn, NY 11233

TODD KRAMER
652 Macon Street, Apt 2
Brooklyn, NY 11233

SAMANTHA FLOOD
652 Macon Street, Apt 2
Brooklyn, NY 11233

PENELOPE BENNETT
652 Macon Street, Apt 3
Brooklyn, NY 11233

VANESSA NIBLETT
652 Macon Street, Apt 3
Brooklyn, NY 11233

LATOYA BURNS
652 Macon Street, Apt 3
Brooklyn, NY 11233

LEO SALZMAN, ESQ.
REFEREE
2116 Avenue J
Brooklyn, NY 11210

_____
Michael Kassiotis

STATE OF NEW YORK )
COUNTY OF NASSAU )ss.:

On the 13ᵗʰ day of _November_ , in the year 2018 , before me, the undersigned, personally appeared Michael Kassiotis, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

MARY MARSH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MA6120260
Qualified in Nassau County
My Commission Expires December 20, 20__

5 of 11

Case 1:19-cv-07922-ENV-CLP   Document 1   Filed 02/21/19   Page 119 of 143 PageID #: 119

# NOTICE OF SALE SUPREME COURT KINGS COUNTY

THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-OA11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-OA11, Plaintiff against

ANTHONY W. HALL, et al Defendants

Attorney for Plaintiff(s) Druckman Law Group PLLC, 242 Drexel Avenue, Westbury, NY 11590 Attorney (s) for Plaintiff (s).

Pursuant to a Judgment of Foreclosure and Sale entered November 8, 2018, I will sell at public auction to the highest bidder at Kings County Supreme Court, 360 Adams Street, Room 224, Brooklyn, NY 11201 on January 10, 2019 at 2:30 PM. Premises known as 652 Macon Street, Brooklyn, NY 11233. Block 1673 Lot 31. All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York. Approximate Amount of Judgment is $895,692.11 plus interest and costs. Premises will be sold subject to provisions of filed Judgment Index No 515066/2015. For sale information, please visit www.Auction.com or call (800) 280-2832.

Leo Salzman, Esq., Referee                          37367

Case 1:19-cv-07922-ENV-CLP    Document 1    Filed 02/26/19    Page 120 of 143 PageID
#: 120

 **AUCTION.COM**

# INVOICE

**INVOICE #:** ARIO248043
**DATE:** 12/14/2018
**DUE DATE:** 01/13/2019

**TOTAL AMOUNT:** $720.80
**TOTAL DUE:** $720.80

AUCTION.COM
1 Mauchly
Irvine, CA 92618

**BILL TO:** FCL Druckman Law Group PLLC
242 Drexel Avenue
Westbury NY 11590

**PROPERTY ADDRESS:** 652 MACON STREET, BROOKLYN NY 11233
**TRUSTEE CASE NUMBER:** 37367
**MORTGAGOR:** ANTHONY W. HALL
**SALE DATE:** 01/10/2019

| DESCRIPTION / MEMO | AMOUNT |
|---|---|
| Publication Costs | $720.80 |
| **TOTAL AMOUNT:** | **$720.80** |

**REMIT TO:** Please make checks payable to:
Auction.com LLC
1 Mauchly
Irvine, CA 92618
Please contact Jennifer Crain for questions
Telephone: (949) 699-3274
Email: Jenniferc@Auction.com

Wire Information
Bank Name: Wells Fargo Bank, NA
Address: 333 Market Street, 12th Floor
San Francisco, CA 94105
Routing# 121000248
Account# 4125526475
Beneficiary Name: Auction.com LLC

**Invoice Date:** 12/14/2018   **Terms:**   **Due Date:** 01/13/2019   **Customer ID:** 8920

FILED: KINGS COUNTY CLERK 02/06/2019 03:02 PM
NYSCEF DOC. NO. 82

**SCNG** **Schneps Community News Group**
1 MetroTech Center North, 10th Floor
Brooklyn, NY 11201

*Courier Life* *TimesLedger* *Caribbean Life* *Bronx Times* *The Villager* *Chelsea* *Downtown Express* *The Villager* *Gay City*

| | | | | | |
|---|---|---|---|---|---|
| Approved by: | | | | Date: | |
| Client: | 77925 | Accu-Serve Ltd | | Phone: | (516) 508-5927 |
| Ad # | 638787 | Requested By: | ALI ULLAH | Fax: | |
| Sales Rep.: | C053 | EUGENA PECHENAYA (C) | | Phone: | (718) 260-8307 |
| | | legal@cnglocal.com | | Fax: | (718) 260-2549 |
| Class.: | 6045 | Notice of Sale | | | |
| Start Date: | 12/07/2018 | | End Date: 12/28/2018 | Nb. of Inserts: | 4 |
| PO #: | | | | | |
| Publications: | The Brooklyn Graphic Legal | | | | |
| Total Price: | $720.80 | | | Page 1 of 2 | |

PROOF

PROOF

# EXHIBIT D

Anthony W. Hall

Shell Point Mortgage Servicing, Bank of Ny-Mellon

Appellate Term Docket No.    2019-01614 K C
Lower Court Index No.        076066/19

## IMPORTANT FILING INFORMATION:

The record on appeal has been received by this court. Pursuant to section 731.8 (a) or 732.8 (a) of the Appellate Term Rules, you must file your appellant's brief by **January 30, 2020** or it will be dismissed on **February 18, 2020** for lack of prosecution. The brief should contain the written reasons for your appeal.

*Note: If you were previously granted a stay in this court by Order to Show Cause or Motion, you must abide by the dates previously given to you in order to protect any stay that was granted.

## WEBSITE:

Please visit the courts website for instructions on how to prepare your brief: http://www.nycourts.gov/courts/ad2/appellateterm.shtml Refer to Form 5A (*Perfecting a Civil Appeal*), located under the Forms and Practice Aids link.

## ENLARGEMENT REQUESTS: (Not applicable if you have previously been given a date to perfect your appeal by Order to Show Cause or Motion)

Pursuant to Section 731.8 (d) or 732.8 (d) of the Appellate Term Rules (which can be found on our website), you may request more time to file your brief by submitting either a stipulation between the parties, or a letter stating the reason for such request, addressed to the clerk of the court. The letter must indicate that a copy was mailed to all other parties.

## EMAIL NOTIFICATION:

The court encourages you to sign up for email notification of future notices and decisions regarding your appeal. Please visit the court's website and refer to Form 12, located under the Forms and Practice Aids link for easy to follow instructions.

If you have any questions, please call the Appellate Term Clerk's Office at (347) 401-9580.

# Civil Court of the City of New York

COUNTY OF _____ K _____

Part _____

X Index No. 76066/15

Anthony W. Hill

_____ Claimant(s)/Plaintiff(s),

against

Shellpoint Mortgage Servicing
Bank of New York Mellon Defendant(s)

**AFFIDAVIT OF SERVICE
OF
ORDER TO SHOW CAUSE
AND
AFFIDAVIT IN SUPPORT**

State of New York, County of **Kings** ss.:

X **Anthony Hall** _____ , being duly sworn, deposes and says:
(Name of Deponent)

I am over 18 years of age and not a party to this action. At X 10.00 **AM**/PM, on X 8/29/5
(Time)                                    (Date)

X at **55 Beatle Place Greenville S.C 79681**
(Address)

in the County of X **Kings** _____ , City of New York, I served the annexed ORDER TO SHOW CAUSE and
AFFIDAVIT IN SUPPORT of the Order in this matter on:

(1). **Shellpoint Mortgage Servicing**
(Name of Person Served)

known to me to be the **Defendant** _____ by:
(Claimant/Plaintiff/Defendant)

☐ (a) Delivering a true copy to him/her at the above address.

**Description of Individual Served in Person:**

| | | |
|---|---|---|
| Sex: M | Color of Skin: B.L | Color of Hair: B.L.C |
| Approximate Age: 47 | Approximate Weight: 170 | Approximate Height: 5'10 |

☑ (b) Mailing a true copy, properly sealed and enclosed in a post-paid wrapper, by Certified Mail, Return
Receipt Requested, in a Post Office of the United States Postal Service within the State of New York,
addressed to the **Defendant** _____ at the above address.
(Claimant/Plaintiff/Defendant)

## AND ALSO SERVED THEM ON

2. Marshal _____ by:
(Name of Marshal)

☐ (a) Delivering a true copy to _____
(Name of Person Served)
a person in the Marshal's office.

**Description of Individual Served in Person:**

| | | |
|---|---|---|
| Sex: _____ | Color of Skin: _____ | Color of Hair: _____ |
| Approximate Age: _____ | Approximate Weight: _____ | Approximate Height: _____ |

☐ (b) Mailing a true copy, properly sealed and enclosed in a post-paid wrapper, by Certified Mail, Return
Receipt Requested, in a Post Office of the United States Postal Service within the State of New York,
addressed to the above named Marshal at:

Sworn to before me this _____ day of Sept 2019

_____
(Notary Public or Court Employee and Title)

_____
(Signature of Deponent)

V-GP-19 (Revised 10/90)

# New York City Police Department
## Omniform System - Complaints

| Report Cmd: 081 | Jurisdiction: N.Y POLICE DEPT | IOA/OAR: | Report Status: Final No Arrests | Complaint #: 2019-081-004975 | No Other Versions Legacy Blue Complaint | No Other Revisions Complaint |
|---|---|---|---|---|---|---|

**Occurrence INSIDE OF 652**
Location: MACON STREET
Name Of Premise:
Premises Type: RESIDENCE - HOUSE
Location Within Premises:
Visible By Patrol?: NO

Property: NYC Parks Dept.
Did the offense occur on a NYC Parks Dept. Property?: ON
Command: NYC Parks Dept. Property Name:

Precinct: 081
Sector: O
Beat: 11
Post:

Aided #
Accident #
O.G.C.R. #

**Occurrence From:** 2019-08-29 10:00 THURSDAY
Occurrence thru: 2019-08-29   12:30
Reported: 2019-09-16   09:10
Complaint Received: MM/KM

**Classification: ILLEGAL EVICT (MISD)**
Attempted/Completed: COMPLETED
Most Serious Offense by: MISDEMEANOR
PD Code: 379
PL Section:
Keycode: 363 ADMINISTRATIVE CODE

Case Status: OPEN
Unit Referred To: P.D.U
Clearance Code:
Log/Class #: 0
Clearance Arrest Id:
Clearance AO Cmd:
File #:
Prints Requested: NO

Is This Related To Stop And Frisk Report: ON
SQF Number: 0000-000-00000
Was The Victim's Personal Information Taken Or Possessed?: ON
Was The Victim's Personal Information Used To Commit A Crime?: ON

Detective Borough: Wheel Log #:
Name Of Gang:
Child in Community?: ON
Intimate Relationship?: ON

DIR Requested?: ON
Related? Gang: ON
Name Of Gang:
Child Abuse Suspected?: ON
Officer Body Worn Camera: ON

Taxi Robbery:
Method of Conveyance:
Location of Pickup:
Activated:
Amber Strees Light: ON
Partition Present: ON

If Arson:
Structure?
Occupied?
Damage by:

If Burglary:
Forced Entry?
Structure?
Entry Method:
Entry Location:

Alarm:
Bypassed?
Comp Responded?:
Company Name/Phone:
Crime Prevention Survey Requested?:
Complaint/Reporter Present?:

Canvass Conducted: ON
Transit/Transit week:

Supervisor On Scene – Rank / Name /
Command:

**NARRATIVE**
AT TPO CV STATES THAT HE IS IN A PROCESS OF FORECLOSURE FOR HIS HOUSE. THE SUSPECT A LAWYER REPRESENTATIVE FROM HIS HOUSE CAME ON 8/29/19 AND CHANGED THE LOCKS ON CVS HOME WITHOUT ANY NOTICE OR COURT ORDER. THE BANK DID NOT FOLLOW AN EVICTION PROCESS AND ILLEGALLY EVICTED THE CV FROM HIS HOME.

**No NYC TRANSIT Data for Complaint # 2019-081-004975**

| Total Victims: 1 | Total Witnesses: 1 | Total Reporters: 0 | Total Wanted: |
|---|---|---|---|

**VICTIM: # 1 of 1**

Name: HALL, ANTHONY

Complaint#: 2019-081-004975

Nick/AKA/Maiden:
UMOS: NO
Sex/Type: MALE
Race: BLACK
Age: 48
Date Of Birth: 02/06/1971
Disabled? NO
Is this person not Proficient in English?: NO
If Yes, Indicate Language:
N.Y.C.H.A Resident? NO
Is Victim fearful for their safety / life? NO
Escalating violence / abuse by suspect? NO
Were prior DIR's prepared for C/V? NO

Gang/Crew Affiliation: NO
Name:
Identifiers:

Will View Photo: YES
Will Prosecute: YES
Notified Of Crime Victim Comp. Law: NO

**LOCATION**
ADDRESS     CITY     STATE/COUNTRY ZIP     APT/ROOM
HOME-PERMANENT 652 MACON STREET BROOKLYN NEW YORK     11233

Phone #: HOME - Not Provided/Unavailable CELL: 347-362-3735 BUSINESS:Not Provided/Unavailable BEEPER: Not Provided/Unavailable
E-MAIL: Not Provided/Unavailable

Action against Victim:

Actions Of Victim Prior To Incident:
AT HOME

Victim Of Similar Incident:
NO

If Yes, When And Where

**WITNESS : # 1 of 1**

Name: HALL, BRENDA

Complaint #: 2019-081-004975

Nick/AKA/Maiden:
Sex/Type: FEMALE
Race: BLACK
Age: 071
Date Of Birth: 11/28/1947
Is this person not Proficient in English?: NO
If Yes, Indicate Language:

Gang/Crew Affiliation: NO
Name:
Identifiers:

Relationship To Victim: MOTHER

**Location**
Address     City     State/Country Zip     Apt/Room
HOME-PERMANENT 554 MACON STREET BROOKLYN NEW YORK     11233

Phone #: HOME - - CELL: - - BUSINESS: - - BEEPER: - - E-MAIL

**WANTED: # 1 of 1**

Name:

Complaint#: 2019-081-004975

Arrested: NO

Nick/AKA/Maiden:
Sex: MALE
Race:
Age:
Date Of Birth: UNKNOWN
U.S. Citizen:
Place Of Birth:
Is this person not Proficient in English?: NO
If Yes, Indicate Language:
Accent: NO

Height: 5'10N
Weight: 0
Eye Color:
Hair Color:
Hair Length:
Hair Style: UNKNOWN
Skin Tone: UNKN
Complexion: UNKNOWN

S.S. #: 0

Order Of Protection: NO
Issuing Court:
Docket #:
Expiration Date:
Order of Protection Violated?
Does Suspect abuse Drugs / Alcohol? NO
Suspect threatened /attempted suicide? NO
Is the suspect Parole / Probation? NO
Relation to Victim: STRANGER
Living together: NO
Can be Identified: NO

Gang/Crew Affiliation: NO

| VICTIM: # 1 of 1 | Name: HALL,ANTHONY | Complaint#: 2019-081-004975 |
|---|---|---|

Nick/AKA/Maiden:
UMOS: NO
Sex/Type: MALE
Race: BLACK
Age: 45
Date Of Birth: 02/06/1973
Disabled? NO

Is this person not Proficient in English?: NO
If Yes, indicate Language:

N.Y.C.H.A Resident? NO
Is Victim fearful for their safety / life? NO
Escalating violence / abuse by suspect? NO
Were prior DIR's prepared for O/V? NO

Gang/Crew Affiliation: NO
Name:
Identifiers:

Will View Photo: YES
Will Prosecute: YES
Notified Of Crime Victim Comp. Law: NO

| LOCATION | ADDRESS | CITY | STATE/COUNTRY | ZIP | APT/ROOM |
|---|---|---|---|---|---|
| HOME-PERMANENT | 652 MACON STREET | BROOKLYN | NEW YORK | 11233 | |

Phone #: HOME: Not Provided/Unavailable CELL: 347-362-3731 BUSINESS:Not Provided/Unavailable BEEPER: Not Provided/Unavailable
E-MAIL: Not Provided/Unavailable

Action against Victim:

Actions Of Victim Prior To Incident:
AT HOME

Victim Of Similar Incident:
NO

If Yes, When And Where

| WITNESS : # 1 of 1 | Name: HALL,BRENDA | Complaint #: 2019-081-004975 |
|---|---|---|

Nick/AKA/Maiden:
Sex/Type: FEMALE
Race: BLACK
Age: 671
Date Of Birth: 11/28/1947

Is this person not Proficient in English?: NO
If Yes, indicate Language:

Gang/Crew Affiliation: NO
Name:
Identifiers:

Relationship To Victim: MOTHER

| Location | Address | City | State/Country | Zip | Apt/Room |
|---|---|---|---|---|---|
| HOME-PERMANENT | 654 MACON STREET | BROOKLYN | NEW YORK | 11233 | |

Phone #: HOME: - - CELL: - - BUSINESS: - - BEEPER: - - E-MAIL:

| WANTED: # 1 of 1 | Name: | Complaint#: 2019-081-004975 | Arrested: NO |
|---|---|---|---|

Nick/AKA/Maiden:
Sex: MALE
Race:
Age:
Date Of Birth: UNKNOWN
U.S. Citizen:
Place Of Birth:
Is this person not Proficient in English?: NO
If Yes, indicate Language:
Accent: NO

Height: F 11N
Weight: 6
Eye Color:
Hair Color:
Hair Length:
Hair Style: UNKNOWN
Skin Tone: UNKN
Complexion: UNKNOWN

S.S. #: 0

Order Of Protection: NO
Issuing Court:
Docket #:
Expiration Date:
Order of Protection Violated?
Does Suspect abuse Drugs / Alcohol? NO
Suspect threatened /attempted suicide? NO
Is the suspect Parole / Probation? NO
Relation to Victim: STRANGER
Living together: NO
Can be Identified: NO

Gang/Crew Affiliation: NO

# EXHIBIT E

**UCC FINANCING STATEMENT ADDENDUM**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

004167

2013 FEB 26  AM 9:00

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

ANTHONY WINSTON HALL

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one name (11a or 11b) - do not abbreviate or combine names

11a. ORGANIZATION'S NAME

OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

| ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION |

**12. | ADDITIONAL SECURED PARTY'S  or  | ASSIGNOR S/P'S  NAME** - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME

OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

**13. This FINANCING STATEMENT covers** ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14. Description of real estate:**

**16. Additional collateral description:**

**15. Name and address of a RECORD OWNER of above-described real estate** (if Debtor does not have a record interest):

**17. Check only if applicable and check only one box.**
Debtor is a ☒ Trust  or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

**18. Check only if applicable and check only one box.**
☒ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

PAGE 2 OF 2

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER [optional]
ANTHONY WINSTON HALL
B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

ANTHONY WINSTON HALL

PO BOX 78
NEW YORK NY USA 10272

004167

2013 FEB 26  AM 9: 00

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

OR 1b. INDIVIDUAL'S LAST NAME  ANTHONY WINSTON HALL
FIRST NAME | MIDDLE NAME | SUFFIX

1c. MAILING ADDRESS  PO BOX 78
CITY  NEW YORK | STATE NY | POSTAL CODE 10272 | COUNTRY USA

ADD'L INFO RE | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION
ORGANIZATION DEBTOR  LEGAL ENTITY  UNITED STATES

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names
2a. ORGANIZATION'S NAME

OR 2b. INDIVIDUAL'S LAST NAME
FIRST NAME | MIDDLE NAME | SUFFIX

2c. MAILING ADDRESS
CITY | STATE | POSTAL CODE | COUNTRY

ADD'L INFO RE | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION
ORGANIZATION DEBTOR

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)
3a. ORGANIZATION'S NAME

OR 3b. INDIVIDUAL'S LAST NAME  Hall
FIRST NAME  Anthony | MIDDLE NAME  Winston | SUFFIX

3c. MAILING ADDRESS  Care of 497 Maple Street Apartment 1
CITY  Brooklyn, New York | STATE NY | POSTAL CODE near [11226] | COUNTRY USA

4. This FINANCING STATEMENT covers the following collateral:
ALL PROPERTY BELONGING TO THE DEBTOR BELONGS TO THE SECURED PARTY.

DEBTOR IS A TRANSMITTING UTILITY.

DEBTOR IS A TRUST.

SEE COMPLETE PROPERTY LIST ON ATTACHMENT "A".

5. ALTERNATIVE DESIGNATION [if applicable]:  LESSEE/LESSOR  CONSIGNEE/CONSIGNOR  ☒ BAILEE/BAILOR  SELLER/BUYER  AG. LIEN  NON-UCC FILING
6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable]  7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]  All Debtors  Debtor 1  Debtor 2
8. OPTIONAL FILER REFERENCE DATA
Anthony Winston Hall, Secured Party Creditor is Non-Domestic without the United States

No. 8005629

FILING OFFICE COPY — UCC FINANCING STATEMENT

International Association of Commercial Administrators (IACA)

FILING NUMBER: 201302260107407

409578

2019 Mar 07 AM11:16

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

hall, anthony-winston
c/o 497 maple st ste 1
brooklyn, ny 11225, USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | ANTHONY WINSTON HALL ™ TRUST | | | |
|---|---|---|---|---|

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS 114 JOHN STREET STE 78 | CITY  NEW YORK | STATE NY | POSTAL CODE 10272 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION TRUST | 1f. JURISDICTION OF ORGANIZATION PRIVATE | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME  ANTHONY WINSTON HALL ™; NON-ADVERSE; NON-BELLIGERENT; NON-COMBATANT | | | | □ NONE |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS 114 JOHN STREET STE 78 | CITY  NEW YORK | STATE NY | POSTAL CODE 10272 | COUNTRY USA |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION TRUST | 2f. JURISDICTION OF ORGANIZATION PRIVATE | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | □ NONE |
|---|---|---|---|---|

OR

| 3b. INDIVIDUAL'S LAST NAME  Hall | FIRST NAME  Anthony-Winston | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS  c/o 497 Maple Street Ste 1 | CITY  Brooklyn | STATE NY | POSTAL CODE (11225) | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
See Collateral Attachment

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | ☒ BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.     Attach Addendum      [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]     [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Filing Number-201903078099804

409578

2019 Mar 07 AM 11:16

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS** (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR** (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME ANTHONY WINSTON HALL ™ TRUST

OR

9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX

**10. MISCELLANEOUS:**

---

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one name (11a or 11b) - do not abbreviate or combine names

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11a. ORGANIZATION'S NAME

OR

11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any

**12.** ☐ **ADDITIONAL SECURED PARTY'S** or ☐ **ASSIGNOR S/P'S  NAME** - insert only one name (12a or 12b)

12a. ORGANIZATION'S NAME | ☐ NONE

OR

12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing. | **16.** Additional collateral description:

**14.** Description of real estate:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.

Debtor is a ☒ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☒ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

inception as well as all property held hereto... necessary to secure the rights, titles, interest and value therefrom, in and of the Root of Title from all Debentures, Indentures, Accounts, and all Pledges represented by same included but not limited to DNA, cDNA, cell lines retina scans fingerprints and hereditaments, res, the energy and all produce derived therefore pro tune, contracts, agreements, and signatures and /or endorsements, facsimiles, printed, typed or photocopied of owners name predicted on the 'Straw-man,'Ens legis/Trust/Estate described as the debtor and all property is accepted for value and is exempt from levy. Trustee is not a surety to any and all property is accepted for value and is exempt from levy. Trustee is not a surety to any ... by explicit reservation/indemnification. the following property is hereby registered and liened in the same: All Certificates of Birth Document:17025792-7/196-71-302029,SSN/UCC Contract Trust Account-prepaid acct Number: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; Exemption Identification Number:148825576 is herein liened and claimed at the sum certain $100,000,000.00, also registered: Security Agreement No. 02051971-HAW-SA, Hold Harmless & Indemnity Agreement No. 02051971-HAW-HHIA, Trademark under item No. 02051971-TM. Adjustment of this filing is in accord with both public policy and the national UCC. Trustee/Secured Party, Hall-Anthony: Winston, is living flesh and blood sojourning upon the soil of the land known as New York, and not within fictional boundaries, territories nor jurisdiction of any fictional entity including fictional Federal geometric plane(s). Trespass by any agent(s) foreign or domestic, by such in any scheme or artifice to defraud. Culpa est immiscere se rel ad se non pertinent. All property currently held (New York UCC Contract Filings No(s) 201806122270120; 201806122270122;201606122270144;201806122270166;201806122270166;201806122270170) are outstanding and belongs to Trust administered by Trustee/Secured Party, Title 46 USC 31343 and Article 1 and 2 of the International/Convention on Maritime Liens and Mortgages 1993, Held at the Palis Des Nates, Geneva, From April 19 to May 5,1993 United Nations (UN). This Maritime Lien is under safe harbor and sinking funds provisions through the prescription of Law of Necessity and the doctrines of unconscionably and La Mort Salait Le Vif in accordance with Applicable Law, Cardinal Orders, Ordinal Orders, and Commercial Standards

**417816**    **2018 Apr 25 PM11:15**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

```
hall, Anthony winston
c/o 497 maple street
Brooklyn , ny 11225, USA
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME SHELLPOINT MORTGAGE SERVICING | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 55 BEATTIE PLACE | CITY GREENVILLE | | STATE SC / POSTAL CODE 29601 | COUNTRY USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION BANK | 1f. JURISDICTION OF ORGANIZATION PUBLIC | 1g. ORGANIZATIONAL ID #, if any NA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names ☐ NONE

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE / POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b) ☐ NONE

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME HALL | FIRST NAME ANTHONY | | MIDDLE NAME WINSTON | SUFFIX |
| 3c. MAILING ADDRESS P.O. BOX 78 | CITY New York | | STATE NY / POSTAL CODE 10272 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**
RE 746201201US ACCT ▓▓▓▓ FOR REGISTERED MONEY ORDER FOR VALUE OF $918,216.11

**5. ALTERNATIVE DESIGNATION [if applicable]:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☒ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

**6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable]    **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE]    [optional]    ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Filing Number-201804258185590

17025782-8

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

I Certify That the document hereunto annexed is under the Seal of the State(s) of New York, and that such Seal(s) is/are entitled to full faith and credit.*

*For the contents of the annexed document, the Department assumes no responsibility*
*This certificate is not valid if it is removed or altered in any way whatsoever*

In testimony whereof, I, Rex W. Tillerson, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this twenty-ninth day of March, 2017.

*Issued pursuant to CHXIV, State of Sept. 15, 1789, 1 Stat. 68-69; 22 USC 2657; 22USC 2651a; 5 USC 301; 28 USC 1733 et. seq.; 8 USC 1443(f); RULE 44 Federal Rules of Civil Procedure.*

Rex W. Tillerson
Secretary of State

By _____
Assistant Authentication Officer,
Department of State



United States of America

State of New York

Department of State

It is hereby certified, that Nancy T. Sunshine was Clerk of County of Kings in the State of New York, and Clerk of the Supreme Court therein, being a Court of Record, on the day of the date of the annexed certificate, and duly authorized to grant same; that the seal affixed to said certificate is the seal of said County and Court; that the attestation thereof of said Clerk is in due form and executed by the proper officer, and that full faith and credit may and ought to be given to said Clerk's official acts.

In Testimony Whereof, the Department of State Seal is hereunto affixed

Witness my hand at the city of New York this 22nd day of March Two Thousand and Seventeen



_Whitney A. Clark_

Whitney A. Clark
Special Deputy Secretary of State

759298

STATE OF NEW YORK
COUNTY OF KINGS                          SS:
COUNTY CLERK'S OFFICE

I, Nancy T. Sunshine, County Clerk of the County of Kings, State of New York and also Clerk of the Supreme Court in and for said County and State, the same being a Court of Record and having a seal;

DO HEREBY CERTIFY THAT  STEELE, CHRISTOPHE  01ST6011756
Term 8/17/2014 to 8/17/2018

Whose name is subscribed to the annexed affidavit, deposition, certificate of acknowledgment or proof, was at the time of taking the same a NOTARY PUBLIC in and for the State of New York, duly commissioned and sworn and qualified to act as such throughout the State of New York; that pursuant to law a commission, or a certificate of their official character, and autograph signature, have been filed in my office; that as such the Notary Public was duly authorized by the laws of the State of New York to administer oaths and affirmations, to receive and certify the acknowledgment or proof of deeds, mortgages, powers of attorney and other written instruments for lands, tenements and hereditaments to be read in evidence or recorded in this State, to protest notes and to take and certify affidavits and depositions; and that I am well acquainted with the handwriting of such Notary Public or have compared the signature on the annexed instrument with their autograph signature deposited in my office.

IN WITNESS WHERE OF, I have hereunto set my hand and affixed my official seal at Brooklyn, Kings County, New York on March 13, 2017

NANCY T. SUNSHINE
KINGS COUNTY CLERK

CERTIFICATE OF ACKNOWLEDGMENT AND ACCEPTANCE

I, Anthony Winston Hall the living man, in the capacity of Anthony Winston Hall am recorded as the grantee on the BARGAIN AND SALE DEED (With Covenants Against Grantor's Act) for the Real Property described on the attached certified copy of said deed.

It is my freewill, act, and deed, to Acknowledge on and for the public record my Acceptance of the Warranty Deed in Fee-Simple and lawful ownership of the Real Property under the terms of the BARGAIN AND SALE DEED (With Covenant Against Grantor'sAct). I ask that the record on file in the office of registry of deeds be updated to show my Acceptance of the deed and the lawful owner of the Real Property.

All of my other Real Property and interest attached to this Real Property to be immediately returned to me

This is my freewill act and deed, under my hand and seal

Anthony Winston Hall

State of New York, County of _Kings_ ss

On this____ day of March 2017, before me the subscriber _Christophe F. Steele_

Personally appeared Anthony Winston; Hall to me known to be the living man described in and who executed the foregoing instrument and acknowledged before me that he executed the same as his freewill, act and deed

CHRISTOPHE F. STEELE
OTARY PUBLIC, State of New York
No. 01ST6011756
Qualified in Kings County
Commission Expires 08/17/20

DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2004101600197001001E06B6

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| Document ID: 2004101600197001 | Document Date: 10-13-2004 | Preparation Date: 10-16-2004 |
| Document Type: DEED | | |
| Document Page Count: 2 | | |

**PRESENTER:**
RAM ABSTRACT LTD
AS AGENT OF FIDELITY
102-34 JAMAICA AVENUE
RICHMOND HILL, NY 11418
718-846-7800
PICK UP

**RETURN TO:**
ANTHONY W HALL
652 MACON STREET
BROOKLYN, NY 11233

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 1673 | 31 | Entire Lot | | 652 MACON STREET |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

| CRFN | _ or Document ID | or _ | Year | Reel | Page | or File Number |
|---|---|---|---|---|---|---|

### PARTIES

**GRANTOR/SELLER:**
INEZ M. MILLER
652 MACON STREET
BROOKLYN, NY 11233

**GRANTEE/BUYER:**
ANTHONY W. HALL
654 MACON STREET
BROOKLYN, NY 11233

### FEES AND TAXES

| Mortgage | | | Recording Fee: | $ | 47.00 |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | | |
| Exemption: | | | | $ | 75.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 1,540.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |

NYC HPD Affidavit in Lieu of Registration Statement

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed    11-17-2004 16:37
City Register File No.(CRFN):
2004000713765

*Annette M Hill*

*City Register Official Signature*

RP4460

## BARGAIN AND SALE DEED WITH COVENANT AGAINST GRANTOR'S ACTS
### (INDIVIDUAL OR CORPORATION)

FORM 8002 (short version), FORM 8007 (long version)

CAUTION: THIS AGREEMENT SHOULD BE PREPARED BY AN ATTORNEY AND REVIEWED BY ATTORNEYS FOR SELLER AND PURCHASER BEFORE SIGNING.

*THIS INDENTURE*, made the  October 13 , 2004

between

Inez M. Miller, of 652 Macon Street, Brooklyn, New York 11233

party of the first part, and

Anthony W. Hall of 654 Macon Street, Brooklyn, New York 11233

party of the second part,

*WITNESSETH*, that the party of the first part, in consideration of Ten Dollars and No Cents ($10.00), lawful money of the United States, paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

*ALL* that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Southerly side of Macon Street distant 382 feet westerly from the southwesterly corner of Ralph Avenue and Macon Street;

RUNNING THENCE Southerly and parallel with Ralph Avenue and part of the distance through a party wall 100 feet;

THENCE Westerly and parallel with Macon Street 18 feet;

THENCE Northerly and parallel with Ralph Avenue and part of the distance through another party wall 100 feet to the southerly side of Macon Street;

THENCE Easterly along the southerly side of Macon Street 18 feet to the point or place of BEGINNING.

Said Premises being known by street address 652 Macon Street, Brooklyn, NY.

*TOGETHER* with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; *TOGETHER* with the appurtenances and all the estate and rights of the party of the first part in and to said premises, *TO HAVE AND TO HOLD* the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

*AND* the party of the first part, covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

*AND* the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

*IN WITNESS WHEREOF*, the party of the first part has duly executed this deed the day and year first above written.

INEZ M. MILLER

IN PRESENCE OF:

Block 1673
Lot 51

Acknowledgment by a Person Within New York State (RPL § 309-a)

STATE OF NEW YORK }
COUNTY OF ~~KINGS~~ Nassau } ss.:

On the __13__ day of __October__ in the year __2004__, before me, the undersigned, personally appeared Inez M. Miller, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that she executed the same in her capacity(ies), and that by her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

THOMAS J. JORDAN
Notary Public, State of New York
No. 01JO6045910
Qualified in Queens County
Commission Expires April 17, 2007

**Bargain and Sale Deed With Covenant Against Grantor's Act**

Title No. RAM Abstract #RF4460

Inez M. Miller
To
Anthony W. Hall

Section 6
Block  1673
Lot    31
County or Town Kings
Street Address    652 Macon Street
                  Brooklyn, New York 11233

Return By Mail To:

Anthony W Hall
652 Macon St
Brooklyn NY    11233

Reserve This Space For Use Of Recording Office

This is a true and correct copy of the original document recorded in the Office of the City Register of New York as attested by
_____ on the __10__ day of __March__ 20_17_. (not valid unless signed and dated)

EXHIBIT F

**ANTHONY HALL (MTG 0578160549)**
**Fidelity Advisor Global Equity Income Fund**
Symbol:                    FIQQX
CUSIP:                     31580A506

Inception Date:
Net Assets:                10/4/2018
                           $17,367,000.00 as of
                           2/28/2019
Portfolio Assets:          $17,367,000.00 as of
                           2/28/2019

**A little about the Fund:**

Fidelity Advisor Global Equity Income Fund seeks reasonable income, in pursuing this objective, the fund will also consider the potential for capital appreciation. The Fund invests primarily in income-producing equity securities across different countries and regions.